# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| LEONARD J. RICHARDS,<br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>DONALD MARK RITCHIE, *Minnesota Secretary of State (the "Secretary"), in his individual and official capacities  also known as* Mark Ritchie; BRAD ANDERSON, *Election Administrator of the Secretary, in his individual and official capacities;* BERT BLACK, *Data Practices Compliance Officer of the Secretary, in his individual and official capacities*; THOMAS A. ROY, *Minnesota Commissioner of Corrections, in his individual and official capacities also known as* Tom Roy; MARK BRANDT DAYTON, *Governor of the State of Minnesota, in his individual and official capacities;* THOMAS EDWARD NELSON, *in his individual capacity as Plaintiff's co-candidate for Governor or Lieutenant Governor of the State of Minnesota in election year 2014*; and the STATE OF MINNESOTA, *by Lori R. Swanson, its Attorney General*,<br><br>　　　　　　　　　　Defendants. | Civil No.  13-3029 (JRT/JSM)<br><br><br><br><br>**MEMORANDUM OPINION AND ORDER ADOPTING REPORTS AND RECOMMENDATIONS OF MAGISTRATE JUDGE** |

Leonard J. Richards, No. 149837, MCF-Stillwater, 970 Pickett Street North, Bayport, MN  55003, *pro se*.

Margaret E. Jacot, Assistant Attorney General, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, Suite 900, 445 Minnesota Street, Saint Paul, MN  55101, for defendants.


Plaintiff Leonard J. Richards ("Richards") is an inmate at the Minnesota

Correctional Facility in Stillwater, Minnesota ("MCF-Stillwater").  Richards initiated this

prisoner civil rights action against the State of Minnesota and state officer defendants Mark Ritchie, Brad Anderson, Bert Black, Thomas Roy, Mark Dayton, and Thomas Nelson, in their individual and official capacities ("state defendants"), pursuant to 42 U.S.C. § 1983 and the United States Constitution, the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act ("RA"). Richards also brings pendent state law claims under the Minnesota Constitution. On May 21, 2014, the state defendants filed a motion to dismiss Richards's claims against them. On May 27, 2014, Richards filed a motion for a Temporary Restraining Order and for a Preliminary Injunction ("TRO/PI Motion"). On January 30, 2015, United States Magistrate Judge Janie S. Mayeron issued a Report and Recommendation ("First R&R"), recommending the Court dismiss all of Richards's claims except claims seeking dismissal under the ADA asserted against the State of Minnesota for damages or injunctive relief and against Roy in his official capacity for injunctive relief. On the same day, the Magistrate Judge issued a second Report and Recommendation ("Second R&R"), recommending the Court deny Richards's TRO/PI Motion.

Richards objected to both R&Rs on various grounds. Because Richards has failed to state a claim on which relief may be granted for any of his claims except the ADA claim against the State of Minnesota and Roy, the Court will adopt the First R&R, allowing the ADA claim against the State of Minnesota and Roy to proceed. The Court will dismiss all other claims. After considering Richards's objections, the Court concludes that Richards is unlikely to succeed on the merits, and the Court will adopt the Second R&R, denying Richards's TRO/PI Motion.

## BACKGROUND

### I.   RICHARDS'S 2010 ELECTION CAMPAIGN AND THE RESULTING RETALIATION

Richards attempted to seek votes as a write-in candidate for Governor of Minnesota in the 2010 election, while he was imprisoned at the Minnesota Correctional Facility in Faribault ("MCF-Faribault").[1]   (First Am. Compl. ("FAC") ¶ 60, Apr. 10, 2014, Docket No. 28.)[2]   In the course of his campaign, Richards mailed a copy of his "political tract," entitled "**MARK BRANDT DAYTON**," to an employee of MCF-Faribault.   (*Id.* ¶¶ 61-62.)   As a result, Richards claims that Faribault prison officials retaliated against Richards.   (*Id.* ¶ 70.)

On October 19, 2010, Richards contends that he was placed in punitive segregation because a prison employee objected to Richards's political tract.   (*Id.* ¶ 72.) Richards was originally charged with "threatening," but the charge was changed to a minor charge of "disorderly conduct."   (*Id.*)   According to Richards, disorderly conduct is "a notorious 'garbage charge' wielded against prisoners who are **politically active** or who **litigate** to improve conditions in prisons and in society generally . . . ."   (*Id.*) Richards appealed his punitive segregation and disorderly conduct charge to the prison warden, but the warden dismissed Richards's claim.   (*Id.* ¶ 73.)   Richards alleges that the

---

[1] Richards objects to the Second R&R's characterization of his political career, including the use of the phrase "attempted to run."   (Objections to Second R&R ("Second Objections") at 1, Feb. 23, 2015, Docket No. 117.)   By using the term "attempted" here, the Court simply adopts Richards's own characterization of his actions from his complaint.   (FAC ¶ 60.)

[2] Richards's complaint spans Docket Numbers 28 and 29.

discipline charge was mere pretext, meant solely to stop him from attracting away votes from Dayton in the 2010 election.  (*Id.* ¶ 79.)   Richards was released from punitive segregation on November 18, 2010.  (*Id.* ¶ 76.)

During the thirty days he spent in punitive segregation, Richards alleges that he was denied necessary medical care.  (*Id.* ¶ 75.)   Richards was told that he would receive the denied care only when he was released from punitive segregation.  (*Id.*)   Richards alleges that the denial of medical care was meant "to quell any resistance [he] might mount to the State of Minnesota's crushing of his First Amendment rights to political expression and political association and his right to substantive and procedural due process under the Fourteenth Amendment."  (*Id.*)

## II.     RICHARDS'S PAROLE HEARING

Richards was considered for parole in February 2011.  (*Id.* ¶ 81.)   At the February 14, 2011 hearing, which was conducted by videoconference, Richards states that Tom Roy, the Minnesota Commissioner of Corrections, was the sole voting member of the parole panel.  (*Id.*)   Although Roy had previously spoken with other life-sentenced prisoners before parole hearings, Roy did not speak with Richards before the hearing. (*Id.*)   Before the hearing, Richards objected to Roy's close connection with Governor Dayton, Richards's gubernatorial opponent.  (*Id.* ¶ 82.)   Richards claims that Roy refused to recuse himself or to consider Richards's objections.  (*Id.*)   Richards was denied parole. (*Id.*)

## III.    RICHARDS'S CELIAC DISEASE

Richards was diagnosed with celiac disease[3] by the Minnesota Department of Corrections ("DOC") in 2011.  (*Id.* ¶ 114.)  Richards received an initial biopsy, which showed that he had suffered damage to his small intestine due to the disease.  (*Id.* ¶¶ 96-97.)  Despite that fact, Richards never received a follow-up endoscopy, with a biopsy, to determine whether his small intestine was healing.  (*Id.* ¶ 96.)  Richards also wanted, but did not receive, genetic testing to ascertain whether celiac disease had actually caused the damage to his small intestine or whether other diseases could be to blame.  (*Id.* ¶ 97.)

On December 23, 2011, Richards obtained a disability accommodation under the ADA.  (*Id.* ¶ 98.)  This accommodation required the prison to give Richards a gluten-free diet.  (*Id.*)  Richards contends, however, that the prison repeatedly failed to give him gluten-free food.  (*Id.* ¶¶ 78, 88.)  Instead, the DOC used Richards's celiac disease to retaliate against him for his 2010 campaign against Dayton for Governor of Minnesota.  (*Id.* ¶ 94.)  In November 2011, for example, Richards claims that the Food Service Director at MCF-Faribault told Richards, "[d]octors have invented the gluten problem," (*Id.* ¶ 94(a)), and refused to give him gluten-free sustenance, (*Id.* ¶ 94(c).)

The DOC later supplemented Richards's disability accommodation to include gluten-free dental materials.  (*Id.* ¶¶ 91, 101.)  As a part of this program, the DOC gave

---

[3] "Celiac disease is a digestive condition triggered by consumption of the protein gluten, which is primarily found in bread, pasta, cookies, pizza crust and many other foods containing wheat, barley or rye.  People with celiac disease who eat foods containing gluten experience an immune reaction in their small intestines.  Celiac disease affects about 1 in 133 Americans." (Pl.'s Nov. 28, 2013 Decl., Ex. 1 at 2, Dec. 4, 2013, Docket No. 11.)

Richards gluten-free toothpaste, dental floss, and materials for use in the prison dental clinic.  (*Id*. ¶ 102.)  Dental care is an essential part of the treatment for Richards's celiac disease.  (*Id*. ¶¶ 113, 115.)  In November 2012, Richards was transferred to the Medical Unit at the Minnesota Correctional Facility-Oak Park Heights ("MCF-OPF") for "alleged needed medical care."  (*Id*. ¶ 103.)  At MCF-OPF, Richards was denied gluten-free tooth paste and dental floss.  (*Id*. ¶ 104.)  The deprivation occurred despite the fact that Richards's disability accommodation covered "off-site (e.g. medical) trips."  (*Id*. ¶ 105.)  Consequently, Richards could not provide himself with dental self-care necessary to preserve his natural teeth.  (*Id*. ¶ 104.)

Later in the month, Richards was transferred to MCF-Stillwater.[4]  (*Id*. ¶ 107.)  At MCF-Stillwater, Richards paid out of pocket for gluten-free toothpaste and dental floss from the prison clinic.  (*Id*. ¶ 108.)  The prison clinic at MCF-Stillwater stopped making gluten-free toothpaste and dental floss available to Richards in September 2013, however.[5]  (*Id*. ¶ 109.)  Being deprived of "reliable, uninterrupted access to necessary dental self-care materials" has caused damage to Richards's teeth.  (*Id*. ¶ 117.)

---

[4] Richards objects to the First R&R's statement that Richards was "transferred . . . to the 'medical unit' at MCF-Stillwater" because he alleges there is no medical unit at MCF-Stillwater.  (Objections to First R&R ("First Objections") at 2, Feb. 23, 2015, Docket No. 118.)  The Court will use Richards's characterization of MCF-Stillwater, although this fact does not change the Court's analysis.

[5] Gluten-free toothpaste and dental floss are not available in the prison store; consequently, Richards is dependent on the prison clinic to obtain gluten-free dental materials.  (FAC ¶ 110.)

## IV.   RICHARDS'S 2014 ELECTION CAMPAIGN

In 2013, Richards considered an additional run for public office. On December 31, 2013, Richards mailed a letter to Mark Ritchie, Secretary of State for the State of Minnesota, and Brad Anderson, Election Administrator to Ritchie, to ask about the requirements for running for Governor and Lieutenant Governor of Minnesota. (*Id.* ¶ 12.) Ritchie and Anderson did not respond, which left Richards:

> (A) uncertain of his fundamental constitutional rights to ballot access in the year 2014 (and in subsequent election years) for the offices of Governor and Lieutenant Governor and (B) in imminent danger of losing the opportunity to exercise his fundamental constitutional rights to political expression and association in the year 2014 by means of an on-ballot candidacy for either of those offices.

(*Id.*)

Richards continued to inquire about the possibility of a run for office. On January 11, 2014, for example, Richards wrote to Bert Black, Data Practices Compliance Officer to Ritchie, requesting a copy of the constitution of the American Fund – a political party Richards had founded.[6] (*Id.* ¶ 41.) Richards included in his letter a check for $1.00, to pay for delivery of an uncertified copy of the constitution. (*Id.* ¶¶ 41-42; *see also id.*, Ex. 1 (Richards Letter to Bert Black).) Although Black did not respond, Anderson wrote to Richards and said that the Secretary of State's Office would return the $1.00 to him. (*Id.* ¶¶ 41-42.) Richards claims he has never received his $1.00. (*Id.*)

---

[6] Richards alleges that the American Fund is a political party formed in 1997. (Decl. of Pl. at 11, Dec. 26, 2013, Docket No. 16.) Richards objects to the Second R&R's statement that "the American Fund political party was formed in 2013." (Second Objections at 2.) Although this fact does not change the analysis, Richards's factual allegation is used here.

On May 20, 2014, Richards mailed a "Notice of Candidacy" to the Secretary of State's Office.  (Pl.'s Deprivations & Notice of Candidacy Decl. at 5, May 27, 2014, Docket No. 48.)  Richards intended to run for the U.S. House of Representatives seat in Minnesota's Sixth District, and the notice declared that he met the qualifications for running for that office.  (*Id.*)  The candidacy notice also included Richards's name, the office he was seeking, his chosen political party, and his legal address.  (*Id.*)

On May 28, 2014, Richards received a letter from Black, returning his Notice of Candidacy.  (Aff. of Bert Black ("Black Aff."), Ex. A, July 14, 2014, Docket No. 67.)  The letter explained the requirements of candidacy, including the need to submit an affidavit and either a filing fee or petition.  (*Id.*)  Black also sent Richards the Secretary of State's Office's "2014 Guide for Candidates."  (*Id*. at 4-5.)  As of the time of Black's Affidavit, the Secretary of State's Office had not received a notarized Affidavit of Candidacy, filing fee, or nominating petition from Richards.  (Black Aff. ¶ 7.)

On May 27, 2014, Richards filed a motion for a temporary restraining order and for preliminary injunctive relief.  (TRO/PI Motion, May 27, 2014, Docket No. 45.)  Richards sought a preliminary injunction requiring Ritchie, Anderson, Black, and the State of Minnesota: "(1) to place [Richards's] name on the 2014 Primary Election ballot for the Democratic-Farmer-Labor party nomination for U.S. Representative, Sixth District; (2) to place [Richards's] name on the ballot for that office in the 2014 General Election if [Richards] prevail[ed] in the Primary Election; and (3) to accept [Richards's] Notice of Candidacy" without any filing fee or petition.  (*Id*. at 1.)  In addition, Richards requested a temporary restraining order requiring Ritchie "to arrange in all respects to

place [Richards's] name on the 2014 ballot for U.S. Representative, Sixth District, as a Democratic-Farmer-Labor party candidate for the said Federal legislative office." (*Id.* at 1-2.)

On May 30, 2014, after filing the TRO/PI Motion, Richards tried to get the Affidavit of Candidacy that Black sent to him notarized. (Richards Decl. ¶ 3, Aug. 26, 2014, Docket No. 85.) Richards went to the office of Lt. Gloria Andreachi, an MCF-Stillwater employee who also happened to be a notary public. (*Id.*) Per DOC policy, Lt. Andreachi declined to notarize Richards's Affidavit of Candidacy. (*Id.*)

## V.    THIS PROCEEDING

Richards initiated this case on October 6, 2013 against state and federal defendants. (Notice of Removal, Ex. A (Summons and Compl.), Nov. 5, 2013, Docket No. 1.) Federal defendant Eric Holder removed the case to federal court and moved to dismiss the case. (*Id.*; Mot. to Dismiss, Nov. 15, 2013, Docket No. 3.) Richards filed his first amended complaint on April 10, 2014 against the state defendants, alleging violations of his right to run for federal and state office; violations of his substantive and procedural due process rights; violations of his right of access to the courts; retaliation; failure to provide him with adequate medical and dental care; sexual harassment; and unconstitutional restraint on his political speech. (FAC.) The defendants filed a motion to dismiss on May 21, 2014. (State Defs.' Mot. to Dismiss, May 21, 2014, Docket No. 31.) As noted above, Richards filed his TRO/PI motion on May 27, 2014. (TRO/PI Motion.)

On January 30, 2015, the Magistrate Judge issued her First R&R, recommending the Court grant in part, and deny in part, the defendants' motion to dismiss.  (First R&R at 86-88, Jan. 30, 2015, Docket No. 110.)  On that same date, the Magistrate Judge issued her Second R&R, recommending the Court deny Richards's TRO/PI motion.  (Second R&R at 26, Jan. 30, 2015, Docket No. 111.)  After receiving an extension of time to file his objections, Richards timely objected to both R&Rs.  (Objections to First R&R ("First Objections"), Feb. 23, 2015, Docket No. 118; Objections to Second R&R ("Second Objections"), Feb. 23, 2015, Docket No. 117.)  In this Order, the Court will consider Richards's objections to both R&Rs.

## DISCUSSION

### I.    STANDARD OF REVIEW

Upon the filing of a report and recommendation by a magistrate judge, a party may "serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1).  "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).

## II.   OBJECTIONS TO THE MAGISTRATE JUDGE'S R&R AS TO THE STATE DEFENDANTS' MOTION TO DISMISS

### A.   General Objections[7]

Richards first objects, generally, to all proposed dismissals with prejudice.  (First Objections at 1.)  To the extent that this objection applies to the recommended dismissal with prejudice of the ADA and RA claims against Dayton and Roy in their individual capacities, the Court will overrule this objection because the Magistrate Judge correctly determined that the complaint failed to state a claim on which relief could be granted.  A plaintiff cannot assert ADA and RA claims against state officials in their individual capacities.  *See Randolph v. Rodgers*, 253 F.3d 342, 348 (8th Cir. 2001) ("We agree that the public-entity limitation precludes ADA claims against state officials in their individual capacities."); *Dinkins v. Corr. Med. Servs.*, 743 F.3d 633, 634 (8th Cir. 2014) ("This court affirms the dismissal of the individual-capacity claims against [the state officials.]  They cannot be sued in their individual capacities under the ADA or the RA."); *see also Micklus v. Greer*, 705 F.2d 314, 317 (8th Cir. 1983) (dismissal for failure to state a claim on which relief may be granted is a dismissal on the merits).  The remaining dismissals with prejudice are discussed below.

Richards also objects to the state defendants serving the Magistrate Judge with their responses to Richards's objections.  (Letter to Magistrate Judge Mayeron ("Richards

---

[7] In his objections, Richards notes that, given the need to respond quickly and his lack of access to legal research resources in prison, he could only make "telegraphic" objections.  (First Objections at 1 & n.1.)  With that caveat in mind, the Court will attempt to construe Richards's objections as broadly as possible.

Letter") at 1, Mar. 12, 2015, Docket No. 124.)[8]   The Court overrules this objection because the actions of the state defendants are not an unusual activity that could be characterized as lobbying or improperly attempting to curry favor with the Magistrate Judge.  Indeed, the local rules expressly allow for a party to respond to objections.  D. Minn. LR 72.2(b)(2).

### B.    Minnesota Constitution Objections

Richards objects to the recommendation to dismiss his Minnesota constitutional claims, arguing that such claims should be left undisturbed for litigation in Minnesota courts.[9]  (First Objections at 1-2.)  Richards cannot demonstrate, however, that he has valid claims under the Minnesota Constitution, because the Minnesota Supreme Court has not recognized the claims he asserts.  Indeed, "Minnesota courts explicitly refuse to find causes of action for damages under the Minnesota Constitution unless the Minnesota Supreme Court has recognized the cause of action."  *Riehm v. Engelking*, 538 F.3d 952, 969 (8th Cir. 2008); *see also Porter v. Hennepin Cnty.*, No. 06-3142, 2008 WL 2202961, at *6 (D. Minn. May 23, 2008) ("Unlike 42 U.S.C. § 1983, Minnesota has no statutory scheme that creates a private right of action for violations of the Minnesota

---

[8] Because this letter was sent after the Magistrate Judge had issued her R&Rs and after this Court had begun considering Richards's objections, the Court will construe the letter as further objections to the R&Rs.

[9] Richards's full objection requests that these "claims under the Minnesota Constitution, the state statutes and administrative rules, and state decisional law" remain undisturbed.  (First Objections at 1-2.)  However, Richards has not asserted any state law claim other than under the Minnesota Constitution.

Constitution."); *Fearing v. St. Paul Police Dep't*, No. 02-4744, 2005 WL 914733, at *5 (D. Minn. Apr. 20, 2005) ("[C]ourts have repeatedly stated that Minnesota has not recognized private remedies for violations of the Minnesota Constitution.").

Because the Minnesota Supreme Court has not recognized the constitutional claims Richards alleges, and because the state has not waived its sovereign immunity under its constitution, Richards cannot bring valid state constitutional claims. Irrespective of whether Richards seeks relief under the Minnesota Constitution in federal or state court, Richards's Minnesota constitutional claims fail as a matter of law. Consequently, the Court need not leave these claims undisturbed for resolution by a state court. The Court will overrule this objection.

### C.    Section 1983 Objections

#### 1.    Medical and Dental Claims

Richards objects to the Magistrate Judge's recommendation to dismiss with prejudice his medical and dental care claims. He argues that, to the extent he is unable to obtain redress under the ADA and RA, he should be able to assert these claims under 42 U.S.C. § 1983. (First Objections at 2.)

The general rule is that a plaintiff may use Section 1983 to enforce not only rights contained in the Constitution, but also rights that are defined by federal statutes. *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir. 1999). However, "[a]n exception to this general rule exists when a comprehensive remedial scheme evidences a congressional intent to foreclose resort to section 1983 for remedy of statutory

violations." *Id*.  In that circumstance, courts presume that Congress "intended that the enforcement mechanism provided in the statute be exclusive." *Id*.

The Eighth Circuit has repeatedly concluded that the ADA and RA have comprehensive remedial schemes, and that those schemes bar an attempt to pursue ADA and RA claims under Section 1983.  *Id*.; *Battle v. Minn. Dep't of Corr.*, 40 F. App'x 308, 309 (8th Cir. 2002) ("We agree with the District Court that [the plaintiff's] disability-based discrimination claims were either not cognizable under § 1983 or fail on their merits.  As to his ADA and RA claims, his sole recourse was under the ADA and RA themselves . . . .").  Therefore, Richards may not assert his ADA and RA medical and dental claims under Section 1983.  The Court will overrule this objection.

## 2.  One Dollar Check

Richards also objects to the recommendation to dismiss his claim requesting the return of his one dollar from the Secretary of State's Office.[10]  (First Objections at 2.)  He construes this claim as a takings claim under the due process clause.  (*Id*.)  Assuming, without deciding, that Richards's effort to obtain his one dollar amounts to a takings claim, the Court still concludes that the claim should be dismissed.  As the Eighth Circuit has repeatedly held, "[t]he general rule is that a plaintiff must seek compensation through state procedures before filing a federal takings claim against a state."  *von Kerssenbrock-*

---

[10] The record indicates that Richards sent the Secretary of State's Office a check for $1.00.  (FAC, Ex. 1 (Richards Letter to Bert Black).)  It is not entirely clear from the record whether the office cashed the check or not.  The Court will assume, for the purposes of this analysis, that the office did cash Richards's check.

*Praschma v. Saunders*, 121 F.3d 373, 379 (8th Cir. 1997).  Here, Richards claims that he sent one dollar to the Secretary of State's Office, that an official in the office promised to return the dollar, and that he has not yet received it.  (FAC ¶¶ 41-42.)  He has not shown, however, that he has sought compensation for his lost dollar from the state through any applicable state procedures, or that he has even sent a follow-up letter to the office and been rebuffed.  (*Id.*)  Because Richard has not shown that he pursued his claim with the state directly, he cannot proceed in this Court on a takings claim.  *Saunders*, 121 F.3d at 379.  As a result, the Court will overrule this objection.

In the alternative, the Court notes that if Richards sought a return of the one dollar through a different cause of action – seeking damages – that claim would also be barred. The Eleventh Amendment bars any claims against state officials that seek retroactive equitable relief or a declaratory judgment for a past constitutional violation.  *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (holding that the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past").  In addition, the Eleventh Amendment "bar[s] the award of any retroactive relief for violations of federal law that would require payment of funds from a state treasury."  *Skelton v. Henry*, 390 F.3d 614, 617 (8th Cir. 2004) (citing *Edelman v. Jordan*, 415 U.S. 651, 677 (1974)); *see also Fontenot v. McCraw*, 777 F.3d 741, 751-55 (5th Cir. 2015) (holding that the Eleventh Amendment barred a suit against a state seeking return of "erroneously inflicted surcharges"). Because Richards would be seeking retroactive monetary relief from the state, his claim under this alternative theory would also be barred.  The Court will deny this objection.

### 3.      First Amendment Claims

Richards objects to the recommended dismissal of his Section 1983 First Amendment claims; he argues that his right to disseminate political tracts and other political literature should be left undisturbed.   (First Objections at 2.)   This First Amendment claim is against the State of Minnesota generally, however, and not against any specific official.  (FAC ¶ 155.)

A claim against the state is barred by the state's sovereign immunity under the Eleventh Amendment, unless the state has waived immunity.  U.S. Const. amend. XI; *see also Smith v. Beebe*, 123 F. App'x 261, 262 (8th Cir. 2005) ("Although Congress may abrogate the states' sovereign immunity, we are bound by the Supreme Court's holding in *Will* [*v. Mich. Dep't of State Police*, 491 U.S. 58, 66-67 (1989)] that Congress did not do so when it enacted § 1983.").  Richards has not demonstrated that the state waived its immunity.  *See United States v. Metro. St. Louis Sewer Dist.*, 578 F.3d 722, 725 (8th Cir. 2009) ("[A] state does not waive its immunity by entering a general appearance or by defending a case in federal court so long as it asserts its Eleventh Amendment sovereign immunity defense in a timely manner.").

As a result, Eleventh Amendment immunity protects the state.  The Court will overrule this objection and dismiss the First Amendment claims.  *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 64-65 (1996) (holding that when a lawsuit is barred by the Eleventh Amendment, the case must be dismissed for lack of subject matter jurisdiction).  However, because the First Amendment claims are being dismissed for lack of subject

matter jurisdiction, the dismissal will be without prejudice.  *See O'Grady v. Marathon Cnty. Child Support Agency*, No. 05-2418, 2006 WL 1715473, at *1 (D. Minn. June 19, 2006) (citing *Frederiksen v. City of Lockport*, 384 F.3d 437, 438-39 (7th Cir. 2004)).

Richards further objects that, contrary to the First R&R's characterization, the DOC did not just "refuse to disseminate" Richards's political tract; rather, the DOC punished Richards for attempting to do so.  (First Objections at 2.)  The Court will also overrule this objection because the distinction does not change the analysis.  Richards's First Amendment claims are against the State of Minnesota, not one specific individual. (FAC ¶ 155.)  Regardless of whether the DOC simply refused to disseminate Richards's political tract or more maliciously punished him, Richards's claims against the state cannot proceed because it is immune from suit under the Eleventh Amendment.

Richards requests that this Court plainly state what the Court is allowing or prohibiting Richards to do.  (First Objections at 2.)  As explained above, the Eleventh Amendment bars Richards's First Amendment claims against the State of Minnesota. Because this Court will dismiss Richards's First Amendment claims for lack of subject matter jurisdiction, the Court is not ruling on the merits of his claims.  Consequently, the Court is neither allowing nor prohibiting Richards from disseminating his political tract. The Court is simply holding that Richards's First Amendment claims are dismissed without prejudice.

### D.    Ballot-Access Objections

Richards argues in his objections that this Court should abstain from ruling on the merits regarding Richards's eligibility to campaign for state office.  (First Objections at 2.)  But the Court concludes that Richards has not shown that, despite his felon status, he should be able to run for state office.

Because Richards was convicted of a felony, Richards is not an eligible voter. Minn. Const. art. VII, § 1.  The Minnesota Constitution states that a person 21 years of age and older, who is "**entitled to vote**," is "eligible for any office elective by the people in the district wherein he has resided 30 days previous to the election, except as otherwise provided in this constitution, or the constitution and laws of the United States."  Minn. Const. art. VII, § 6 (emphasis added).  Article VII, § 6 of the Minnesota Constitution "was intended as a restriction, and it has the effect of a constitutional declaration that only such persons as by the provisions of this article are entitled to vote shall be 'eligible' to any elective office."  *State ex rel. Taylor v. Sullivan*, 47 N.W. 802, 810-11 (Minn. 1891).  This restriction also applies to the qualifications for running for Governor and Lieutenant Governor, which are codified separately in Article V, § 2.  *State ex rel. Arpagaus v. Todd*, 29 N.W.2d 810, 811 (Minn. 1947) ("Eligibility for **any** public office in Minnesota is . . . expressly made to depend upon the right to vote." (emphasis added)).

Richards argues that reading a voter-eligibility requirement into the qualification requirements for Governor and Lieutenant Governor would: (1) go against the plain meaning of Article V, § 2 of the Minnesota Constitution; (2) imply that the state Revisor of Statutes cannot find and correctly index the controlling law on the qualifications for

Governor and Lieutenant Governor; and (3) demonstrate that the official *Minnesota Legislative Manual* incorrectly outlines the qualification requirements for the offices. (Richards Letter at 2.)

Article V, § 2 of the Minnesota Constitution reads that the Governor and Lieutenant Governor "[e]ach shall have attained the age of 25 years and, shall have been a bona fide resident of the state for one year next preceding his election, and shall be a citizen of the United States."  Minn. Const. art. 5, § 2.  This section does not state that a candidate for Governor or Lieutenant Governor must be an eligible voter.  But the section is correctly interpreted by reading the eligible-voter requirement of Article VII, § 6 into the requirements for Governor and Lieutenant Governor.   If the eligible-voter requirement had to be explicitly stated for each office, Article VII, § 6 would be rendered meaningless.   Such a reading would be directly contrary to one of the key canons of statutory interpretation: an interpretation should not render a constitutional or statutory provision superfluous.  *See* Minn. Stat. § 645.17(1) ("[T]he legislature does not intend a result that is absurd, impossible of execution, or unreasonable."); Minn. Stat. § 645.17(2) ("[T]he legislature intends the entire statute to be effective and certain."); *In re Estate of Jotham*, 722 N.W.2d 447, 454 (Minn. 2006) ("[I]f possible, no word or phrase of a statute should be deemed superfluous or insignificant.").

Furthermore, the Minnesota Supreme Court has held that the "except as otherwise provided" exception in Article VII, § 6 should be limited to offices where the requirements are expressly specified.  *Meyers v. Roberts*, 246 N.W.2d 186, 189-90 (Minn. 1976) (concluding that Article VII, § 6's age minimum is superseded when a

statute expressly states a different age).  The implication of *Meyers* for this case is that,

unless an eligibility provision explicitly states that one need not be an eligible voter to

hold a certain office, that portion of Article VII, § 6 applies.  *Meyers's* interpretation of

the Minnesota Constitution has been the well-settled law of Minnesota, one that cannot

be unsettled due to the organizational choices of the state Revisor of Statutes.  Moreover,

the Secretary of State's *Minnesota Legislative Manual* – which Richards cites – is a

reference guide, not a binding legal document.  Because the most sensible reading of the

Minnesota Constitution is to read the eligible-voter requirement of Article VII, § 6 into

the requirements for running for Governor and Lieutenant Governor in Article V, § 2, the

Court will follow *Meyers* and overrule this objection.

In the alternative, Richards argues that this Court should certify the question to the

Minnesota Supreme Court.  (First Objections at 2-3.)  The Minnesota Supreme Court

"may answer a question of law certified to it by a court of the United States . . . if the

answer may be determinative of an issue in pending litigation in the certifying court and

there is no controlling appellate decision, constitutional provision, or statute" of

Minnesota.  Minn. Stat. § 480.065, subd. 3.  Use of a state's certification procedure by a

federal district court rests in its sound discretion.  *Allstate Ins. Co. v. Steele*, 74 F.3d 878,

881-82 (8th Cir. 1996).

In this case, the dispositive issue is whether Article V, § 2 has an eligible-voter

requirement.  As discussed above, the law concerning the broad applicability of

Article VII, § 6's eligible-voter requirement is well-settled.  *See Meyers*, 246 N.W.2d at

189-90.  Under *Meyers*, the reasonable interpretation of Article V, § 2 is to read into it the

eligible-voter requirement from Article VII, § 6.  Consequently, this Court is within its discretion to not certify the question to the Minnesota Supreme Court.  The Court will overrule this objection as well.

Richards also objects on the grounds that the Minnesota Legislature, in fashioning the eligibility provisions for statewide office, has no authority whatsoever to add to – or to override – any part of the Minnesota Constitution.  (Richards Letter at 1.)  The Court will overrule this objection because the Magistrate Judge correctly determined that this claim fails as a matter of law.  The Minnesota Legislature "possesses all legislative power not withheld or forbidden by the terms of the state or federal Constitution."  *Williams v. Evans*, 165 N.W. 495, 495 (Minn. 1917).  Neither the Minnesota nor the United States Constitutions forbid the Minnesota Legislature from placing restrictions on electoral candidates.  More importantly, the requirement that a candidate be eligible to vote is found within Article VII, § 6 of the Minnesota Constitution itself and is not merely a legislative restriction.  In sum, the Court has considered Richards's objections to the First R&R.  Because they do not have merit, the Court will overrule Richards's First Objections and adopt the First R&R.[11]

---

[11]  In addition, the Court agrees with the Magistrate Judge's conclusion that Thomas Edward Nelson is not a proper party and will dismiss Nelson from the case.  (First R&R at 2 n.1.)

### III.  OBJECTIONS TO THE MAGISTRATE JUDGE'S R&R AS TO RICHARDS'S TRO/PI MOTION

Richards objects to the characterization of his injury as being incapable of repetition.  (Second Objections at 3.)  The Court notes that this is a close issue.  However, even if the harm Richards allegedly suffered is capable of repetition, Richards is still unlikely to win on the merits.  Thus, this objection is not outcome determinative.

In his objections, Richards again claims that Minnesota's notarization requirement for candidates' affidavits is unduly burdensome.  (Second Objections at 4.)  The Court will overrule this objection.  Federal courts have generally upheld notarization requirements in the absence of some evidence that the statute at issue is unusually burdensome.  *See Am. Party of Texas v. White*, 415 U.S. 767, 787 (1974) (holding that plaintiffs did not prove that a Texas statute requiring that all signatures evidencing support for an unaffiliated or minority party be notarized was unusually burdensome).  Some notarization requirements have been struck down as unusually burdensome.  In *Perez-Guzman v. Gracia*, 346 F.3d 229, 239-43 (1st Cir. 2003), the First Circuit upheld a district court order striking down a Puerto Rico law that required new political parties to collect over 100,000 separately notarized petitions.  The court noted that the number of notaries in the commonwealth was limited, that the requirement hampered efforts to gather signatures, and that the cost of notarizing 100,000 petitions was prohibitively expensive.  *Id.* at 239-40.  Consequently, the court held that the requirement "impose[d] a severe burden on [the plaintiff's] rights."  *Id.* at 243.  In contrast, the notarization

requirement in this case – which simply requires a notarization of the candidate's affidavit – is significantly less onerous.

In sum, Richards is unlikely to succeed on the merits because, under Supreme Court precedent, Minnesota's notarization requirement is not a severe or unusual burden. To prove that a preliminary injunction should be granted, a plaintiff must establish that he is likely to succeed on the merits of his claims. *Dataphase Sys. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). Because Richards cannot show any likelihood of success on the merits of the claims underlying his TRO/PI Motion, he cannot establish the necessary grounds for a preliminary injunction. The court will overrule Richards's Second Objections and adopt the Second R&R.[12]

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Richards's objections [Docket Nos. 117 and 118] and **ADOPTS** the first Report and Recommendation of the Magistrate Judge dated January 30, 2015 [Docket No. 110] and the second Report and Recommendation of the Magistrate Judge

---

[12] Richards also objects to the Second R&R's statement that Richards "named the wrong defendants." (Second Objections at 3.) The Court will overrule this objection because, despite mentioning the State of Minnesota, Dayton, and Roy in his complaint, Richards has not named the state officials responsible for promulgating or enforcing the DOC notarization policy.

Richards also objects to several factual characterizations in the Second R&R. First, Richards disagrees with the Second R&R's portrayal of his candidacy history. (Second Objections at 1-2.) Second, Richards disputes the characterization of his notarization requests. These factual disputes include whether Richards demanded free notary service, whether Richards demanded notary service "at all times," and whether alternative notary services are as cheap as proposed. (*Id.* at 4-5.) The Court notes these objections. However, even if the Court were to accept each objection, the factual changes would not be outcome determinative.

dated January 30, 2015 [Docket No. 111].  Accordingly, **IT IS HEREBY ORDERED** that:

1.     The state defendants' Motion to Dismiss [Docket No. 31] is **GRANTED in part** and **DENIED in part**, as follows:

a.     All claims against Thomas Edward Nelson are **DISMISSED without prejudice**.

b.     All claims asserted against any defendant alleging a violation of the Minnesota Constitution are **DISMISSED with prejudice**.

c.     All claims under 42 U.S.C. § 1983 asserted against the State of Minnesota for damages or injunctive relief are **DISMISSED without prejudice**.

d.     All claims under 42 U.S.C. § 1983 asserted against Mark Brandt Dayton in his individual and official capacities for damages or injunctive relief are **DISMISSED without prejudice**.

e.     All state and federal ballot-access claims asserted under 42 U.S.C. § 1983 against Donald Mark Ritchie, Brad Anderson, and Bert Black in their official and individual capacities for damages or injunctive relief, including any claims that they failed to provide Richards with notarization services at MCF-Stillwater in connection with his attempt to file an Affidavit of Candidacy for U.S. Representative for the 2014 election, are **DISMISSED with prejudice**.

f.     All claims under 42 U.S.C. § 1983 asserted against Thomas A. Roy in his individual and official capacities for damages or injunctive relief are **DISMISSED without prejudice**, except for the parole claims asserted against

Thomas A. Roy and the claim that Thomas A. Roy failed to provide adequate medical and dental care, which are **DISMISSED with prejudice**.

      g.     All claims under the Americans with Disability Act and the Rehabilitation Act asserted against Mark Brandt Dayton and Thomas A. Roy in their individual capacities for damages or injunctive relief are **DISMISSED with prejudice**.

      h.     All claims under the Americans with Disabilities Act and the Rehabilitation Act asserted against Mark Brandt Dayton in his official capacity for injunctive relief are **DISMISSED without prejudice**.

      i.     All claims seeking dismissal under the Americans with Disability Act asserted against the State of Minnesota for damages or injunctive relief and against Thomas A. Roy in his official capacity for injunctive relief are **DENIED**.

      j.     All claims under the Rehabilitation Act against the State of Minnesota for damages or injunctive relief and against Thomas A. Roy in his official capacity are **DISMISSED without prejudice**.

      k.     As to the claims dismissed without prejudice, Richards may amend his complaint, consistent with the requirements of Rule 8 of the Federal Rules of Civil Procedure, to assert facts to support his claims against Mark Brandt Dayton, Thomas A. Roy, the State of Minnesota or other state officials. Plaintiff shall have twenty-one (21) days from the date of this Order to file and serve an amended complaint.

2.      Richards's Motion for Temporary Restraining Order and for Preliminary Injunction [Docket No. 45] is **DENIED**.


DATED:     March 30, 2015               _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                      JOHN R. TUNHEIM
                                              United States District Judge