UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

LEONARD J. RICHARDS,                          CIVIL NO. 13-3029 (JRT/JSM)

     Plaintiff,

v.                                            <u>REPORT AND RECOMMENDATION</u>

STATE OF MINNESOTA,
*by Lori R. Swanson,*
*its Attorney General;*
MIKE HERMERDING,
*State Program Administrative*
*Manager Principal of the*
*Department of Corrections*
*of the State of Minnesota ("DOC"),*
*in his individual and official capacities;*
SHEILA PACKWOOD,
*Food Program Director of the DOC,*
*in her individual and official capacities;*
NANETTE M. LARSON,
*Health Services Director of the DOC,*
*in her individual and official capacities;*
THOMAS A. ROY,
*Commissioner of the DOC,*
*in his individual and official capacities;*
MARK BRANDT DAYTON,
*Governor of the State of Minnesota,*
*in his official capacity;*
STEPHEN F. SIMON,
*Secretary of State of the State of Minnesota,*
*in his individual capacity;*
BRADLEY K. ANDERSON,
*Election Administrator of the Secretary,*
*in his individual capacity; and*
*all persons in concert with any of the*
*defendants or on their behalf.*

     Defendants.


JANIE S. MAYERON, United States Magistrate Judge

     The above matter came before the undersigned upon Defendants State of

Minnesota, Hermerding, Packwood, Larson, Roy, Dayton, Simon, and Anderson's

Partial Motion to Dismiss Second Amended Complaint [Docket No. 147].   The matter has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I.   FACTUAL BACKGROUND

Plaintiff Leonard J. Richards is an inmate at the Minnesota Correctional Facility in Stillwater, Minnesota ("MCF-Stillwater").   On or about October 6, 2013, Richards commenced the instant action in state court, which was subsequently removed to Federal court on November 5, 2013.  See Notice of Removal of Action to Federal Court [Docket No. 1].   Currently, discovery in this case is to be completed on or before March 1, 2016, and the case is to be trial ready as of July 1, 2016.   Amended Pretrial Scheduling Order [Docket No. 210].

### A.   First Amended Complaint and Motion to Dismiss

On April 10, 2014, Richards filed an 89-page First Amended Complaint, in which he asserted claims against the State of Minnesota; Mark Brandt Dayton, Governor of Minnesota; Mark Ritchie, Minnesota Secretary of State; Thomas A. Roy, Minnesota Commissioner of Corrections; Brad Anderson and Bert Black, Minnesota elections officials; and Thomas Edward Nelson, Richards' co-candidate for Governor or Lieutenant Governor of Minnesota in the 2014 general election.   First Amended Complaint ("FAC") [Docket No. 28, 29].   Richards claimed violations of the Americans with Disabilities Act ("ADA"), § 504 of the Rehabilitation Act ("RA"), various amendments of the United States Constitution, the Minnesota Constitution, and Minnesota elections statutes.

On May 21, 2014, the State and Dayton, Roy, Ritchie, Anderson, and Black (collectively, the "State Defendants") moved to dismiss the First Amended Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure for failure to comply with federal pleading requirements and because Richards' claims failed as a matter of law.

On January 30, 2014, this Court issued a Report and Recommendation on the State Defendants' Motion to Dismiss. See Docket No. 110. Relevant to the instant matter, this Court recommended that the State Defendants' motion to dismiss all claims under the ADA asserted against the State of Minnesota for damages and injunctive relief, and against Roy in his official capacity for injunctive relief, be denied. Id., pp. 68-78, 85, 87. As to the balance of the motion, the Court found:

> Richards's claims for any relief under 42 U.S.C. § 1983 against the State, and any claims for compensatory and punitive damages against the individual state defendants in their official capacities were barred by the Eleventh Amendment, and these claims must be dismissed without prejudice for lack of subject matter jurisdiction. Id., pp. 26-29, 83, 85-86.

> Richards' claims for prospective injunctive relief against Ritchie, Black, and Anderson (collectively, the "OSS[1] Defendants") in their official capacities failed as a matter of law, and should be dismissed with prejudice. Id., pp. 29-35, 87.

> All § 1983 claims against Roy in his individual capacity seeking compensatory and punitive damages, and all claims against Roy in his official capacity seeking injunctive relief, should be dismissed without prejudice, as Roy was not personally involved in any of the alleged violations, nor was he responsible for enforcing any allegedly unconstitutional conduct against Richards. Further, any § 1983 claim against Roy in his official capacity based on the denial of medical and dental services should be dismissed with prejudice because Richards had asserted these claims against Roy

---

[1]   "OSS" refers to Office of the Secretary of the State of Minnesota.

under the ADA based on the same alleged violations, and Congress did not intend for claimants to use § 1983 to vindicate rights guaranteed by Title II of the ADA. Id., pp. 35, 38, 78-79 at n. 37, 84.

All § 1983 claims against Dayton in both his individual and official capacities, including claims for injunctive relief, should be dismissed without prejudice, as Dayton was not personally involved in any of the alleged violations, nor was he responsible for enforcing any allegedly unconstitutional conduct against Richards.  In addition, any claims under the ADA and RA against Dayton in his official capacity should be dismissed without prejudice for lack of personal involvement in the violations of Richards's disability accommodation. Id., pp. 37-38, 71, 82-84, 87.

All ADA and RA claims against Roy and Dayton in their individual capacities should be dismissed with prejudice because those statutes provided a cause of action against public entities, and not individuals. Id., pp. 68-70, 80, 84, 87.

All RA claims against the State should be dismissed without prejudice, as Richards had failed to allege that the State had accepted federal funds for the operation of the Department of Corrections. Id., pp. 82, 85, 87.

On March 30, 2015, the United States District Court, Judge John R. Tunheim, issued an Order adopting the Report and Recommendation and granting in part and denying in part the State Defendants' motion to dismiss as follows:

a.     All claims against Thomas Edward Nelson are DISMISSED without prejudice.

b.     All claims asserted against any defendant alleging a violation of the Minnesota Constitution are DISMISSED with prejudice.

c.     All claims under 42 U.S.C. § 1983 asserted against the State of Minnesota for damages or injunctive relief are DISMISSED without prejudice.

d.     All claims under 42 U.S.C. § 1983 asserted against Mark Brandt Dayton in his individual and official capacities for damages or injunctive relief are DISMISSED without prejudice.

4

e.      All state and federal ballot-access claims asserted under 42 U.S.C. § 1983 against Donald Mark Ritchie, Brad Anderson, and Bert Black in their official and individual capacities for damages or injunctive relief, including any claims that they failed to provide Richards with notarization services at MCF-Stillwater in connection with his attempt to file an Affidavit of Candidacy for U.S. Representative for the 2014 election, are DISMISSED with prejudice.

f.      All claims under 42 U.S.C. § 1983 asserted against Thomas A. Roy in his individual and official capacities for damages or injunctive relief are DISMISSED without prejudice, except for the parole claims asserted against Thomas A. Roy and the claim that Thomas A. Roy failed to provide adequate medical and dental care, which are DISMISSED with prejudice.

g.      All claims under the Americans with Disability Act and the Rehabilitation Act asserted against Mark Brandt Dayton and Thomas A. Roy in their individual capacities for damages or injunctive relief are DISMISSED with prejudice.

h.      All claims under the Americans with Disabilities Act and the Rehabilitation Act asserted against Mark Brandt Dayton in his official capacity for injunctive relief are DISMISSED without prejudice.

i.      All claims seeking dismissal under the Americans with Disability Act asserted against the State of Minnesota for damages or injunctive relief and against Thomas A. Roy in his official capacity for injunctive relief are DENIED.

j.      All claims under the Rehabilitation Act against the State of Minnesota for damages or injunctive relief and against Thomas A. Roy in his official capacity are DISMISSED without prejudice.

k.      As to the claims dismissed without prejudice, Richards may amend his complaint, consistent with the requirements of Rule 8 of the Federal Rules of Civil Procedure, to assert facts to support his claims against Mark Brandt Dayton, Thomas A. Roy, the State of Minnesota or other state officials. Plaintiff shall have twenty-one (21) days from the date of this Order to file and serve an amended complaint.

Memorandum Opinion and Order Adopting Reports and Recommendations of Magistrate Judge ("March 30, 2015 Order"), pp. 24-25 [Docket No. 125].

### B.  Second Amended Complaint

On April 14, 2015, Richards filed a Second Amended Complaint ("SAC") against the State; Mike Hermerding, State Program Administrator for the Minnesota Department of Corrections ("DOC") in his individual and official capacities; Sheila Packwood, Food Program Director of the DOC, in her individual and official capacities; Nanette Larson, Health Services Director of the DOC, in her individual and official capacities; Roy, in his individual and official capacities;[2] Dayton, in his official capacity; Stephen Simon, Secretary of State of the State of Minnesota, in his individual capacity; and Anderson, Election Administrator of the Secretary of State of the State of Minnesota, in his individual capacity.  SAC, pp. 4-8 [Docket No. 134].

To buttress his claims under the RA, Richards alleged that the State of Minnesota accepted federal funds to support the DOC's drug treatment program, facilities construction, and prisoner education activities.  SAC, ¶¶ 3-6.  To support his new claims under the Patient Protection and Affordable Care Act ("ACA"), Richards alleged that "[i]n formulating the executive department's budget for the State, Dayton has had the opportunity to include in revenue accruing to the State[,] federal funds from the Medicaid program of the United States Government for the in-patient care of the State's DOC prisoners; such federal funds reduce the amount of money that the State must pay for in-patient care of the State's DOC prisoners.  Such federal funding is authorized by the Affordable Care Act."  Id., ¶ 57.

---

[2]     Hermerding, Packwood, Larson and Roy are collectively referenced in this Report and Recommendation as the "DOC Defendants."

As to his other claims, Richards alleged the following:

### 1.     Gluten-Free Dental Accommodation Violations

In the summer of 2011, Richards was diagnosed with Celiac Disease[3] by the medical clinic at the Minnesota Correctional Facility in Faribault, Minnesota ("MCF-Faribault").  Id., ¶ 37.  On December 23, 2011, the DOC granted Richards a disability accommodation for a "strict gluten-free diet," which included the following restrictions:

(a)     Free of wheat, barley, rye, and oats ("WBRO-free");
(b)     Compatible with Richards's diabetes;
(c)     Supplemented with food to overcome the nutrient-absorption deficiency characteristic of Richards's Celiac Disease;
(d)     At least comparable in quality and quantity to non-medical diets;
(e)     Palatable; and
(f)     Served as three meals a day.

Id., ¶ 12.  This disability accommodation applied to all food and beverages from the prison's central dining hall, canteen, vending machines, Restorative Justice food sales, Christmas gift bags, medications, communion wafers, and off-site medical trips.  Id., ¶ 13.  The accommodation recognized a number of serious and life-threatening medical complications that could be prevented only by unfailing adherence to a proper strict gluten-free diet.  Id., ¶ 14.

Because the accommodation did not explicitly list dental materials, Richards completed a prison grievance cycle to include gluten-free dental materials in the

---

[3]     Celiac disease is "a digestive condition triggered by consumption of the protein gluten, which is primarily found in bread, pasta, cookies, pizza crust and many other foods containing wheat, barley or rye.  People with celiac disease who eat foods containing gluten experience an immune reaction in their small intestines."  Questions and Answers about the Lesley University Agreement and Potential Implications for Individuals with Food Allergies, U.S. Department of Justice, Civil Rights Division (January 2013), http://www.ada.gov/q&a_lesley_university.htm (last visited January 13, 2016).

disability accommodations granted by the DOC.  Id., ¶ 15.  Defendant Larson, Health Services Director of the DOC, responded to Richards's grievance on August 23, 2012, and affirmed Richards's right to gluten-free dental materials.  Id. ¶¶ 16, 17, 19.  Shortly thereafter, the State began making available to Richards gluten-free toothpaste, gluten-free dental floss, and "gluten-free materials used for [Richards's] dental care in the dental clinic at Minnesota Correctional Facility-Faribault."  Id., ¶ 20.

On November 1, 2012, the State, through the DOC, sent Richards for 21 days from MCF-Faribault to the Medical Unit at the Minnesota Correctional Facility in Oak Park Heights ("MCF-Oak Park Heights") for alleged needed medical care.  Id., ¶ 21.  Even though the December 23, 2011 disability accommodation expressly included off-site trips, the State denied Richards gluten-free toothpaste and gluten-free dental floss for his entire 21-day stay at the MCF-Oak Park Heights Medical Unit, which prevented Richards from properly cleaning his teeth and adjoining tissues.  Id., ¶¶ 22, 23.

On November 21, 2012, the State transferred Richards from MCF-Oak Park Heights to MCF-Stillwater.  Id., ¶ 25.  The clinic at MCF-Stillwater initially sold gluten-free toothpaste and dental floss to Richards.  Id., ¶ 28.  In recent months, however, the clinic had begun to supply Richards with gluten-free toothpaste and gluten-free dental floss free of charge.[4]  Id., ¶ 29.

---

[4]     Richards alleged that on April 1, 2015, the State, via an office worker not associated with the prison medical or dental clinic, came to Richards's housing unit and handed him one tube of Crest Cavity Protection toothpaste, one spool of Glide dental floss, and an Authorization/Restriction form with an expiration date.  Id., ¶ 30.  According to Richards, the State's use of a time-limited Authorization/Restriction form presents a danger that at the end of the expiration period, the State could again deny him gluten-free dental materials.  Id.

Beginning in September, 2013, the clinic at MCF-Stillwater stopped making gluten-free toothpaste and gluten-free dental floss available to Richards.  Id., ¶ 31. Richards submitted payment vouchers to the prison clinic for gluten-free dental materials, but to no avail.  Id.  Because gluten-free dental floss and gluten-free toothpaste were not available in the prison store, Richards was totally dependent on the State's clinics to obtain necessary gluten-free dental materials.  Id., ¶ 33.  According to Richards, the deprivation of gluten-free dental materials was a "tool of retaliation" used by the State.  Id., ¶ 34.

With respect to Larson, Richards claimed that even though she had granted his accommodation for gluten-free dental materials in her capacity as DOC Health Services Director, she failed to properly train and supervise her subordinates to implement the accommodation consistently.  Id., ¶ 44.  Richards further alleged that Roy, Minnesota Commissioner of Corrections, failed to properly train and supervise Larson to meet the "known, objective serious medical need of [Richards], a Celiac-Disease patient, for gluten-free dental materials."  Id., ¶ 50.  Additionally, Dayton failed to properly supervise Roy to ensure that he faithfully executed the laws affecting Richards and other prisoners of the State.  Id., ¶ 54.  According to Richards, the violations of his rights were "so numerous and of such long standing that Dayton long ago should have exercised his legal duty to supervise Roy, his appointee, and remove him from office, if removal appears condign."  Id., ¶ 55.

Richards contended that the failure of the State, Larson, Dayton and Roy to provide reliable, uninterrupted access to gluten-free dental materials constituted violations of the Title II of the ADA, Section 504 of the RA, the ACA, and cruel and

unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.  Id., ¶¶ 39, 41, 45, 47, 51.  Richards sought damages from the State and Larson, along with a permanent injunction against the State, Larson, Dayton and Roy. Id., ¶¶ 40, 42, 46, 48, 52, 56.

### 2.    Diabetic and Gluten-Free Diet Accommodation Violations

Richards alleged that the State repeatedly failed to provide food and beverages necessary to comply with the State-issued disability accommodation for his diabetes and Celiac Disease.  Id., ¶¶ 59, 62, 63.

In November, 2011, R. Hacker, Food Service Director at MCF-Faribault, told Richards that "[d]octors have invented the gluten problem" and that "[t]here is no such thing as lactose intolerance."  Id., ¶¶ 64(a), (b).  On October 31, 2012, Richards was served an evening meal that included gluten products.  Id., ¶ 64(c).

In an attempt to hide its misconduct, the State's DOC failed to provide Richards with a "follow-up Upper Gastro-Intestinal endoscopy with biopsy to determine the degree of healing, if any, in the lining of [Richards's] small intestine."  Id., ¶ 65 (emphasis in original).  According to Richards, only such an endoscopic procedure can determine whether healing has occurred, and, if so, to what extent.  Id.  In addition, Richards alleged that the DOC failed to provide him with diagnostic genetic testing to determine whether the damage to his small intestine discovered in 2011 was actually due to Celiac Disease or to a different cause.  Id., ¶ 66.  Richards noted that Dr. Leon Malachinski, principal physician at MCF-Faribault, had ordered genetic testing to be done, but the DOC countermanded his order.  Id., ¶ 67.

According to Richards, defendant Hermerding, State Program Administrative Manager Principal, failed to obtain goods and services to provide food and beverages necessary to meet Richards's nutritional needs for his known, serious medical conditions. Id., ¶ 75.  Additionally, Hermerding failed to properly supervise defendant Packwood, DOC Food Program Director, to ensure that she provided food and beverages necessary to meet Richards's medical needs.  Id., ¶ 76.  Although Hermerding was in charge of monitoring the DOC's Food Service contract with the contractor, he failed to ensure that Packwood's instructions to the contractor were consistently followed, resulting in violations of Richards's disability accommodation.  Id., ¶¶ 77, 78.

With respect to Packwood, Richards alleged that she failed to obtain goods and services to provide food and beverages necessary to meet his medical needs, and failed to properly supervise her subordinates to ensure they would provide such food and beverages.  Id., ¶¶ 83, 84.  Packwood had met twice with Richards at MCF-Faribault, but then failed to ensure that her instructions to the DOC's Food Service contractor were consistently followed, which resulted in violations of Richards's disability accommodation.  Id., ¶ 85.

Richards alleged that his scheduled colonoscopy with Dr. Joshua Colton, a senior surgeon, had to be cancelled due to the DOC's violation of the clear-liquid diet required for colonoscopy preparation.  Id., ¶ 89.  The colonoscopy was ultimately completed by Dr. Adam Kim, a much less experienced endoscopist.  Id.

Richards alleged that Larson denied him a "follow-up Upper GI endoscopy (with the associated biopsies) to determine the current condition of [his] esophageal and

duodenal linings . . . ."  Id., ¶ 92.  Larson also denied Richards genetic testing to determine whether he had the genetic capability to have Celiac Disease.  Id., ¶ 93.  In addition, Larson failed to take effective action to ensure that the DOC provided Richards with a proper medical diet for his diabetes and Celiac Disease.  Id., ¶ 94.  Richards noted that on the date of the Second Amended Complaint (April 12, 2015), the DOC served him cream of wheat, a violation of the WBRO-free diet.  Id.

As for Roy, Richards claimed that he failed to properly train and supervise Hermerding, Packwood and Larson to provide a proper diet and necessary diagnosis and treatment for his diabetes and Celiac Disease.  Id, ¶ 98.  Likewise, Richards alleged that Dayton failed to properly supervise Roy to ensure that Roy faithfully executed all laws affecting Richards and other prisoners.  Id., ¶ 101.  Accordingly, Dayton should have removed Roy from office.  Id., ¶ 102.

Richards alleged that the failure of the State, Hermerding, Packwood, Larson, Roy and Dayton to ensure that Richards received the food and beverages that complied with his disability accommodation, along with the failure of the State, Larson and Roy to provide him with the necessary medical diagnostics and treatment, constituted violations of the ADA, the RA, the ACA, and the Eighth and Fourteenth Amendments, and entitled him to damages and injunctive relief against the State, and injunctive relief against Hermerding, Packwood, Larson, Roy and Dayton.  Id., ¶¶ 70, 71, 73, 80, 81, 88, 89, 95, 96, 98, 99, 103.

### 3.    Section 1983 Violations

Even though every prisoner of the State is entitled by law to multiple daily meals without charge to the prisoner, Richards claimed that he had been repeatedly denied

entire meals by the State, Hermerding, Packwood, Larson, Roy and Dayton.  Id., ¶ 106. As recently as April 8, 2015, all of the defendants denied Richards any edible food for "the entire day until 6:53 p.m."  Id., ¶ 107.  On many occasions when Richards was denied entire meals, the DOC's prison kitchen avoided answering the telephone or the in-prison radio when guards in Richards's housing unit called the kitchen seeking appropriate food and beverages.  Id., ¶ 108.  The State, Hermerding, Packwood, Larson, Roy and Dayton have condoned the behavior of the DOC's Food Service such that the DOC's guards have repeatedly denounced the Food Service personnel's "dishonesty and incompetence."  Id., ¶ 109.

Further, although patients with Celiac Disease are at heightened risk of esophageal cancer, the State, Larson, Roy and Dayton failed to provide a follow-up upper GI endoscopy with biopsy to determine the current condition of Richards's esophagus, and failed to provide Richards with the repeat ultrasound gallbladder examination recommended by Dr. Henry Busch, Jr. on May 20, 2011.  Id., ¶¶ 111, 112.

Richards also alleged that Hermerding violated his rights under the First and Fourteenth Amendments by prohibiting him from corresponding with Packwood to obtain proper food and beverages for his diabetes and Celiac Disease.  Id., ¶ 113. Because Packwood is an employee of the State, Richards maintained that he had the right to communicate with her pursuant to his right to petition the government for the redress of grievances.  Id.

Finally, Richards claimed that the State violated his rights under the Fifth, Eighth and Fourteenth Amendments by imposing "an onerous and costly new and exclusive means for DOC prisoners and their benefactors to deposit money in a DOC prisoner's

DOC trust account." Id., ¶ 114.  According to Richards, when the DOC Finance Office in Moose Lake closed, prisoners will be forced to send money orders to JPay Inc., a commercial entity operating out of Florida, or to use an unspecified "fee-charging modality" instead.  Id.  Richards alleged that JPay has a reputation for delaying the crediting of prisoners' DOC trust accounts with funds received, which allows JPay to pocket the interest earned while holding the funds in its own account.  Id.  Further, neither the DOC nor JPay has informed Richards how much money JPay has paid for entertainment, travel and meetings that will benefit defendants Dayton, Roy, Larson, Hermerding, Packwood and other persons employed by the State.  Id.

Richards requested the following relief against the State, Hermerding, Packwood, Larson, Roy and Dayton:

For violations of the Federal Disability statutes: a declaratory judgment and permanent injunction protecting all of his rights under the ADA, RA and ACA; compensatory damages against the State; punitive damages under the RA and ACA against the State; and the maximum allowable costs, disbursements and attorney's fees.  Id., ¶¶ 115-120.

With respect to his § 1983 claims, Richards requested a declaratory judgment and permanent injunction protecting all of his rights under the First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution; compensatory damages against all defendants except for the State and Dayton; punitive damages against all defendants except for the State and Dayton; and costs, disbursements and attorney's fees.  Id., ¶¶ 121-125.

### C.    **Defendants' Partial Motion to Dismiss**

On May 5, 2015, the State and the DOC Defendants filed their Answer to the Second Amended Complaint, and all defendants filed a partial motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure. In both their Answer and motion, defendants indicated that they were not seeking to dismiss Richards's claims under the ADA against the State and the individually named DOC Defendants in their official capacities, or his official capacity claims under the RA against the individually named DOC employees. [Docket Nos. 145, 147]. Thus, based on the March 30, 2015 Order and their representations in their Answer and Motion, defendants are not challenging (1) Richards's claims under the ADA asserted against the State for damages or injunctive relief, and against Hermerding, Packwood, Larson and Roy in their official capacities for injunctive relief; and (2) Richards's claims under the RA against Hermerding, Packwood, Larson and Roy in their official capacities for injunctive relief. Memorandum of Law in Support of Defendants State of Minnesota, Hermerding, Packwood, Larson, Roy, Dayton, Simon, and Anderson's Motion to Dismiss ("Defs.' Mem."), p. 2 [Docket No. 148]. Defendants are seeking to dismiss all claims asserted under § 1983; all claims against Dayton, Simon and Anderson; all claims against the State under the RA; all claims against the State and DOC Defendants premised on the ACA; and the First Amendment claim against Hermerding.

In support of their motion, defendants first argued that this Court must dismiss all claims that were previously dismissed with prejudice in the March 30, 2015 Order. Specifically, with regard to Richards's claim that current Secretary of State Simon (in lieu of former Secretary of State Ritchie) and Anderson should be enjoined from

prospectively taking any property from him, (SAC, pp. 7-8), defendants asserted that the March 30, 2015 Order dismissed all claims against the OSS Defendants with prejudice for failure to state a claim, and the Court did not give Richards permission to amend his complaint as to these defendants.  Defs.' Mem., p. 5.  Alternatively, even if the Court had given Richards permission, defendants urged that he did not allege any facts indicating that Simon, (who was not a named defendant in the First Amended Complaint), and Anderson had violated his rights.  Id., pp. 5-6 (citing Fed R. Civ. P. 8(a)(2); Krych v. Hvass, 83 F. App'x 854, 855 (8th Cir. 2003)).  Likewise, the Court should dismiss all § 1983 claims against Roy based on his alleged failure to provide medical or dental care for Richards's Celiac Disease, as the March 30, 2015 Order had previously dismissed these claims with prejudice.  Id., p. 6.

Second, defendants submitted that the Court must dismiss all claims asserted under the ACA and claims related to the DOC's management of prisoner trust accounts. Id.  According to defendants, Richards was given permission by the Court only to amend his complaint to provide factual support for the claims that the Court dismissed without prejudice; he was not given permission to add new claims.  Id.; Reply Memorandum of Law in Support of Defendants State of Minnesota, Hermerding, Packwood, Larson, Roy, Dayton, Simon, and Anderson's Motion to Dismiss ("Defs.' Reply"), p. 4.  Further, where defendants had already answered the Complaint, Richards could add these new claims only with their consent or the Court's permission. Defs.' Mem., p. 6 (citing Fed. R. Civ. P. 15).  Rule 15 allows a party to amend its pleading once as a matter of course either 21 days after serving it, or 21 days after service of a responsive pleading or a motion under Rule 12(b).  Defs.' Reply, p. 3 (citing

Fed. R. Civ. P. 15(a)).  Here, more than 21 days had elapsed since defendants filed their first motion dismiss under Rule 12(b), and Richards had already amended his complaint once as a matter of course when he filed the First Amended Complaint.  Id., p. 4.  Thus, Richards either needed the Court's authorization or defendants' agreement to add new claims to his complaint, and he had neither.  Id.

Third, with respect to Richards's claims against Dayton under the ADA, RA, ACA, and the United States Constitution, defendants maintained that Richards failed to provide any facts indicating that Dayton was personally involved in any of the matters alleged in the Second Amended Complaint.  Defs.' Mem., pp. 6-7.  Richards's conclusory allegations that Dayton appointed Roy to his position as Commissioner and that Dayton failed to supervise Roy or to remove Roy from Office, (SAC, ¶¶ 6, 54, 55, 101, 102), were no different than the allegations that the Court had already determined were insufficient to state a claim.  Defs.' Mem., p. 7 (citing March 30, 2015 Order, p. 25; Report and Recommendation, pp. 37, 71, 78, 82).  Failing to allege sufficient facts to connect Dayton to any of the claims alleged in the Second Amended Complaint, Richards' claims against Dayton must be dismissed.  Id., p. 7.

Fourth, defendants argued that the Court must dismiss all claims against all defendants arising under § 1983.  As to any such claims under the Eighth Amendment against the State, (SAC, ¶¶ 41, 106), they are barred by the Eleventh Amendment because the State has not consented to suit in federal court, and Congress has not abrogated the State's immunity with regard to § 1983 claims.  Id., pp. 7-8 (citations omitted).  As for the Eighth Amendment claims against the DOC Defendants and Dayton relating to the alleged denial of a gluten-free diet, gluten-free dental materials,

and medical diagnostic procedures and treatment, defendants asserted that Richards failed to allege sufficient personal involvement by Hermerding, Packwood, Larson, Roy and Dayton to maintain his § 1983 claims. Id., pp. 8-11 (citations omitted); Defs.' Reply, pp. 7-9. In particular, Richards did not allege that Dayton, Roy or Larson authorized DOC staff to withhold gluten-free dental materials, or that they were even aware that Richards had been denied these materials; rather, Richards alleged generally that Dayton, Roy and Larson failed to supervise or train their subordinates to ensure that the subordinates provided gluten-free dental materials. Defs.' Mem, pp. 9-10. These allegations did not meet the level of personal involvement necessary to hold Dayton, Roy and Larson personally liable under § 1983 for depriving Richards of gluten-free dental materials. Id., p. 10.

As for Richards's gluten-free diet claims against Hermerding, Packwood, Larson, Roy and Dayton, defendants submitted that the denial of gluten-free meals at MCF-Faribault were made by "Food Services Director Hacker" and that Richards never alleged that Hermerding, Packwood, Larson, Roy or Dayton were personally involved in these claimed deprivations. Id.

Regarding Richards's claim that Larson, Roy and Dayton failed to provide him with diagnostic medical testing in connection with his Celiac Disease, Richards provided no dates or details to suggest that Larson, who is not a medical doctor, made the decision to deny medical testing, and Richards failed to allege sufficient personal involvement by Roy and Dayton to support his failure-to-supervise theory of liability. Id., p. 11.

With respect to Richards's allegation under § 1983 that Hermerding violated his First Amendment rights by prohibiting him from corresponding with Packwood, defendants noted they could not locate any cases holding that prisoners have a constitutionally protected right to communicate with specific prison personnel. Id., p. 12. Nevertheless, Richards failed to allege sufficient facts to support such a claim. Id., pp. 11-13.

Fifth, defendants asserted that Richards's RA claims against the State were barred by the Eleventh Amendment. Id., pp. 13-14. Defendants urged that even if the DOC's acceptance of federal funds waived Eleventh Amendment immunity for the DOC, it did not waive immunity for the State itself. Id.

Sixth, defendants contended that Richards failed to state a claim for relief under the ACA against the State, the DOC Defendants and Dayton, because he did not allege that he had been excluded from participation in, or denied the benefits of, or subjected to discrimination under any "health program or activity." Id., pp. 14-15 (citing 42 U.S.C. § 18116).[5]

Finally, defendants submitted that the Court must dismiss Richards's claims for punitive damages under the ACA and RA, as punitive damages are not available under those statutes. Id., pp. 15.

---

[5]  Defendants also suggested that any claims against the State premised on the ACA were barred by the Eleventh Amendment, and queried whether Congress even intended the ACA to apply to the DOC. Defs.' Mem., p. 14, n. 2 and 3 ("While Section 1557 does not define 'health program or activity,' the ACA generally appears to be directed at insurance programs, doctors, employers, and medical entities. The DOC is not an insurance program, a doctor, or a medical entity and its relationship with inmates is not that of an employer. It is a prison. Further, much of the ACA does not apply to prisons. For example, inmates in DOC custody do not purchase insurance on the private market and do not receive Medicaid funding while incarcerated. See www.healthcare.gov/incarcerated-people/.").

In response, Richards argued that he had alleged sufficient facts to support his health-related claims against the State, DOC Defendants and Dayton, including his claim under the RA against the State; the Court had not previously addressed his related claims that he had been denied food outright by the State, that his medical diet was now being administered by and under the control of another inmate, and that, through the DOC's contract with JPay, the State and DOC Defendants[6] have imperiled his ability to pay for medical diet food that complies with reasonable accommodation the State had provided to him years ago; and the Court's previous Order did not prevent him from proceeding with his claims against Simon and Anderson for the $1.00 refund for a government document.   Memorandum of Plaintiff in Opposition to the Partial Motion to Dismiss ("Pl.'s Mem."), pp. 4-24 [Docket No. 176].

Richards further averred that the DOC violated principles set forth in Olmstead v. L.C., 527 U.S. 581 (1999), regarding his placement and care.   Id., pp. 26-28.   In Richards's view, the DOC had a responsibility to provide proper medical, dental, nursing and allied-health professional care to meet his medical needs; a single-occupancy sleeping room to prevent "further sexual imposition" on Richards by other patients; and protection for Richards against attacks by "violent persons at large in the non-incarcerated population."   Id., pp. 27-28.

Richards did not respond to the defendants' arguments regarding his ACA claims against the State and DOC Defendants, nor did he address their arguments on behalf of

---

[6]   Richards's JPay claim was asserted solely against the State in the Second Amended Complaint.   See SAC, ¶ 114.   In his opposition brief, however, he described this claim as against the State and DOC Defendants.

Simon and Anderson that he had alleged no facts to support his claim that they should be enjoined from prospectively taking any property from him.

In support of his opposition, Richards relied on and submitted declarations, verified assertions, or exhibits containing additional facts not pled in the Second Amended Complaint. See e.g., Docket Nos. 16-1, 22, 26, 28, 29, 30-1, 64, 74, 75, 88, 94, 95, 97, 99, 100, 102, 105, 109, 157, 159, 160, 161, 171, 177.

In reply, defendants reiterated that the Court should dismiss all claims that Richards did not have permission to assert. Defs.' Reply, pp. 3-5. With respect to Richards's claim against Simon and Anderson regarding their alleged failure to refund $1.00 to him, defendants maintained that the March 30, 2015 Order addressed this claim and dismissed it with prejudice. Id., pp. 4-5 (citing March 30, 2015 Order, pp. 14-15, (citing von Kerssenbrock-Praschma v. Saunders, 121 F.3d 373, 379 (8th Cir. 1997); Skelton v. Henry, 390 F.3d 614, 617 (8th Cir. 2004)). Moreover, because Richards did not actually allege in the Second Amended Complaint that Simon and Anderson took $1.00 from him, defendants submitted that this claim is no longer at issue in this case. Id., p. 5.

Defendants also contended that pursuant to Rule 12, this Court may not consider Richards's declarations, verified assertions, or exhibits containing additional facts not pled in the Second Amended Complaint, nor may the Court consider any new facts alleged in Richards's responsive memorandum regarding inmate control over his food. Id., pp. 5-6. However, even if the Court were to consider these additional facts, they do not support an Eighth Amendment claim against any of the named defendants. Id., pp. 6-7. Further, Richards admitted that he has not exhausted his administrative remedies

with regard to his claim regarding inmate control over his food, as required by the Prison

Litigation Reform Act, (citing Pl.'s Mem, p. 6), and therefore, the Court must dismiss that

Eighth Amendment claim.   Id., p. 7.   As for Richards's Eighth Amendment claims

against the DOC Defendants and Dayton regarding the alleged deprivation of gluten-

free food and dental materials, defendants submitted that these claims are governed by

the ADA and RA, and cannot be pursued under § 1983. Id., p. 9 (citing March 30, 2015

Order, p. 14 (citing Alsbrook v. City of Maumelle, 184 F. 3d 999, 1011 (8th Cir. 1999)

(en banc), cert. dismissed, 529 U.S. 1001 (2000)).

## II.   STANDARD OF REVIEW

A civil complaint will be dismissed upon motion by a defendant if the plaintiff has

failed to plead an actionable claim for relief against that defendant.  Fed. R. Civ. P.

12(b)(6).   In considering a motion to dismiss under Rule 12(b)(6), the pleadings are

construed in the light most favorable to the nonmoving party, and the facts alleged in

the complaint must be taken as true.   In re Operation of Missouri River Sys. Litig., 418

F.3d 915, 917 (8th Cir. 2005) (citations omitted); see also Hamm v. Groose, 15 F.3d

110, 112 (8th Cir. 1994).  Further, litigants must properly plead their claims under Rule 8

of the Federal Rules of Civil Procedure and meet the principles articulated by the United

States Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and

Ashcroft v. Iqbal, 556 U.S. 662 (2009).  To satisfy Rule 8, "a complaint need not contain

'detailed factual allegations[.]'"   United States ex rel. Raynor v. Nat'l Rural Utilities Co-

op. Fin., Corp., 690 F.3d 951, 955 (8th Cir. 2012) (quoting Twombly, 550 U.S. at 555).

However, "it must contain facts with enough specificity 'to raise a right to relief above

the speculative level.'"  Id. (citation omitted).  Accordingly, a "pleading that offers 'labels

and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).  To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).  ""Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.  However, "[i]t is the plaintiffs' burden, under both Rule 8 and Rule 11, to reasonably investigate their claims, to research the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them." Gurman v. Metro Hous. and Redev. Auth., 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011).

"[P]ro se litigants are held to a lesser pleading standard than other parties." Fed. Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  Thus, "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004).  Nevertheless, even a pro se complaint must allege facts—not bare, unsupported, legal conclusions. Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir.1985) (emphasis added); see also Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir.1995) ("At the very least . . . the complaint must

contain facts which state a claim as a matter of law and must not be conclusory") (citation omitted).

Finally, as a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss.  However, "a court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  Wickner v. McComb, 2010 WL 610913, at *5 (D. Minn. 2010) (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)).

## III.    DISCUSSION

### A.    Claims Against Simon and Anderson

Defendants argued that the Court must dismiss all claims against Simon and Anderson because Richards failed to allege any facts indicating that they violated his constitutional rights, and any such claims were dismissed with prejudice by the March 30, 2015 Order.  The Court agrees.

Richards's Second Amended Complaint described Simon and Anderson as defendants being sued in their individual capacities "for prospective relief enjoining [them] from taking any property from [Richards] in violation of [his] rights under Amendments V and XIV of the United States Constitution.  SAC, pp. 7-8.  Simon and Anderson were never mentioned again in the Second Amended Complaint.

To state an actionable § 1983 claim against a defendant in his or her personal capacity, a complainant must allege a set of historical facts, which, if proven true, would demonstrate that the defendant violated the complainant's federal constitutional rights

24

while acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).
Furthermore, "[l]iability under section 1983 requires a causal link to, and direct
responsibility for, the deprivation of rights" protected by the Constitution.  Madewell v.
Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990); Speed v. Ramsey Cnty., 954 F. Supp.
1392, 1397 (D. Minn. 1997) (same).  In other words, civil rights claimants must plead
sufficient facts showing each named defendant's personal involvement in alleged
constitutional wrongdoing.  Ellis v. Norris, 179 F.3d 1078, 1079 (8th Cir. 1999)
(emphasis added); see also Beck v. LaFleur, 257 F.3d 764, 766 (8th Cir. 2001)
(upholding summary dismissal of civil rights claims, because plaintiff's complaint "failed
to allege sufficient personal involvement by any of defendants to support such a claim").

Section 1983 actions against an individual cannot be premised on respondeat
superior liability; a defendant can only be liable for his or her personal acts.  See Iqbal,
556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff
must plead that each Government-official defendant, through the official's own individual
actions, has violated the Constitution."); Jackson v. Nixon, 747 F.3d 537, 543 (8th Cir.
2014) ("To state a claim under § 1983, the plaintiff must plead that a government official
has personally violated the plaintiff's constitutional rights.") (citation omitted); White v.
Holmes, 21 F.3d 277, 280 (8th Cir. 1994) ("A supervisor is not vicariously liable under
42 U.S.C. § 1983 for an employee's unconstitutional activity.") (quoting Bolin v. Black,
875 F.2d 1343, 1347 (8th Cir.), cert. denied, 493 U.S. 993 (1989)).

"While the doctrine of respondeat superior does not apply to § 1983 cases, a
supervisor may still be liable under § 1983 if either his direct action or his 'failure to
properly supervise and train the offending employee' caused the constitutional violation

at issue." Jackson, 747 F.3d at 543 (citations omitted).  As such, "a supervising officer can be liable for an inferior officer's constitutional violation only 'if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.'" Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (quoting Otey v. Marshall, 121 F.3d 1150, 1155 (8th Cir. 1997)).

Here, Richards not only alleged no facts in the Second Amended Complaint regarding Anderson or Simon, he did not even respond to defendants' arguments that his failure to state facts to support his claim that Anderson and Simon should be enjoined from prospectively taking any property from him, required dismissal of this claim against them.  Consequently, he has now waived his right to object to their request for dismissal of this claim.  See Henke v. City of Orono, Civ. No. 14-1681 (DSD/HB), 2014 WL 5475020, at *1 n. 2 (D. Minn. Oct. 29, 2014) ("Henke neither filed memoranda in opposition nor attended the September 12, 2014, hearing on the motions [to dismiss]. Dismissal is warranted on this basis alone.") (citations omitted); cf. Satcher v. University of Ark. at Pine Bluff Bd. Of Trs., 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument."); Njema v. Wells Fargo Bank, N.A., --F. Supp. 3d--, Civ. No. 13-519 (PJS/JSM), 2015 WL 5008940, at *12 (D. Minn. Aug. 18, 2015) (citations omitted) (failing to respond to defendant's statements in a motion for summary judgment regarding damages resulted in waiver of plaintiff's argument on that point); Salaimeh v. Messerli & Kramer, P.A., Civ. No. 13–3201 (DSD/HB), 2014 WL 6684970, at *2, n. 2 (D. Minn. Nov. 25, 2014) (noting that plaintiff did not address certain issues raised by defendant in her opposition to summary judgment and stating "[a]lthough this court

considers those claims, it notes that they have been effectively waived."); <u>Jewell v.
Wick</u>, Civ. No. 13-2069 (DSD/SER), 2014 WL 3573639, at *1 (D. Minn. July 21, 2014)
("Jewell did not appear at the hearing on the motion for judgment on the pleadings.
Given such failure to oppose the motion, judgment on the pleadings would be warranted
on this basis alone.") (citations omitted).

Further, Richards made no claim in the Second Amended Complaint against
Anderson or Simon regarding the failure to refund $1.00 and, in any event, the Court
dismissed this claim with prejudice. March 30, 2015 Order, pp. 14-15. For all of these
reasons, the Court recommends that all claims against Simon and Anderson be
dismissed.

## B. New Claims Alleged in the Second Amended Complaint

In the Second Amended Complaint, Richards asserted disability claims under the
ACA against the State, the DOC Defendants and Dayton, as well as claims under
§ 1983 against the State and DOC Defendants related to the DOC's contract with JPay
and the management of prisoner trust accounts. Because these claims were not
included in the First Amended Complaint, the Court finds that they should be dismissed.

A party may amend its pleading once as a matter of course within 21 days after
serving it, or if the pleading is one to which a responsive pleading is required, 21 days
after service of a responsive pleading or 21 days after service of a motion under Rule
12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). "In all other cases, a
party may amend its pleading only with the opposing party's written consent or the
court's leave." Fed. R. Civ. P. 15(a)(2).

Richards amended his initial Complaint on April 10, 2014.  <u>See</u> FAC.  Thus,
under Rule 15, Richards was required to obtain defendants' consent or the Court's
permission to further amend his pleading.  However, as the March 30, 2015 Order
stated, Richards was permitted to amend his pleading only for the limited purpose of
asserting additional facts to support the claims raised in the First Amended Complaint
that had been dismissed without prejudice.  <u>Id.</u>, p. 25.  It did not allow Richards to add
entirely new claims or legal theories.  Richards's ACA and JPay claims were not
included in his First Amended Complaint, and Richards did not obtain consent of
defendants or leave of Court to assert these entirely new claims.  On this basis alone,
the Court recommends dismissal of these claims.

However, there are additional reasons for recommending dismissal of these
claims.  First, Richards did not respond to defendants' arguments in support of
dismissing any claims premised on the ACA.  As a result, he has again waived his right
to oppose their motion to dismiss the claim.[7]

---

[7]    The Court notes that Richards has not pled facts showing that the DOC, DOC
Defendants or Dayton are subject to the anti-discrimination requirements of the ACA.
Indeed, it is not at all clear that the ACA applies to the DOC or state prisons generally.

Section 1557 contains an anti-discrimination provision that prohibits an individual
on protected grounds such of race, color, national origin, sex, age, and disability from
being "excluded from participation in, be denied the benefits of, or be subjected to
discrimination under, any health program or activity, any part of which is receiving
Federal financial assistance, including credits, subsidies, or contracts of insurance."  <u>Se.
Pennsylvania Transp. Auth. v. Gilead Scis., Inc.</u>, 102 F. Supp. 3d 688, 696 (E.D. Pa.
May 4, 2015) (quoting 42 U.S.C. § 18116).  Given the recent enactment of the ACA, the
question that has yet to be conclusively answered is what constitutes a "health program
or activity, any part of which is receiving Federal financial assistance."  In fact, this Court
has found only three cases that substantively analyze Section 1557—<u>Callum v. CVS
Health Corp.</u>, 2015 WL 5782077 (D.S.C. Sept. 29, 2015); <u>Se. Pennsylvania Transp.
Auth.</u>, <u>supra</u>; and <u>Rumble v. Fairview Health Servs.</u>, Civ. No. 14-2037 (SRN/FLN), 2015
WL 1197415 (D. Minn. Mar. 16, 2015)—along with regulations proposed by the
Department of Health and Human Services that are currently under review and have yet

to be promulgated.  See Nondiscrimination in Health Programs and Activities, 80 FR 54172-01; Callum, 2015 WL 5782077, at *20 ("The regulations for Section 1557 will appear in Part 92 of Title 45 of the Code of Federal Regulations.") (citing 80 Fed. Reg. at 173, 54214).

Callum addressed the question of whether CVS pharmacies constituted a health program or activity covered by the ACA and concluded that they did.  Rumble determined that a healthcare organization that employed emergency room physicians who staffed a hospital, also was health program or activity covered by the ACA.  Se. Pennsylvania Transp. Auth. involved claims against a drug manufacturer, but did not reach the question of whether the drug manufacturer was a health program or activity covered by the ACA.  Rumble also found that "as long as part of an organization or entity receives federal funding or subsidies of some sort, the entire organization is subject to the anti-discrimination requirements of Section 1557.  A potential plaintiff need not seek medical care specifically from the part of the organization that receives federal funding."  2015 WL 1197415, at *12.  But none of these cases provide any guidance as to whether prisons or departments of correction that provide health programs or health-related services ancillary to their stated purpose of incarcerating and rehabilitating inmates, are governed by the ACA (even assuming that the entity or agency receives federal funding for some purpose).

As for the proposed regulations developed by the Department of Health and Human Services to implement the ACA and currently under review, "health program or activity" is defined as follows:

> Health program or activity means the provision or administration of health-related services or health-related insurance coverage and the provision of assistance to individuals in obtaining health-related services or health-related insurance coverage. For an entity principally engaged in providing or administering health services or health insurance coverage, all of its operations are considered part of the health program or activity, except as specifically set forth otherwise in this part. Such entities include a hospital, health clinic, group health plan, health insurance issuer, physician's practice, community health center, nursing facility, residential or community-based treatment facility, or other similar entity. A health program or activity also includes all of the operations of a State Medicaid program.

80 Fed. Reg. 54172, 54174-75 (to be codified at 45 C.F.R. pt. 92.4).

The proposed regulations define a "covered entity" as: "(1) An entity that operates a health program or activity, any part of which receives Federal financial assistance; (2) an entity established under Title I of the ACA that administers a health program or activity; and (3) the Department [of Human Health and Human Services]."

Second, to the extent that the JPay claim against the State is premised on §

1983, it is futile because it is barred by the Eleventh Amendment.

Third, to the extent that the JPay claim against the DOC Defendants is part of

Richards's claim that it imperiled his ability to obtain medically compliant food to

accommodate his disability, this claim is governed by the ADA and RA, and cannot

proceed under § 1983.

Accordingly, the Court recommends that Richards's ACA and JPay claims be

dismissed.

C.   **Claims Under 42 U.S.C. § 1983**

1.   **Denial of Gluten-free Meals, Gluten-free Dental Materials and Medical Diagnostic Procedures**

> It is well recognized that a plaintiff may use section 1983 to enforce not only rights contained in the Constitution, but also rights that are defined by federal statutes.  An exception to this  general  rule  exists  when  a  comprehensive  remedial

---

Id.  This definition contains no examples, but the preamble to the proposed regulations cites numerous examples of covered entities, including pharmacies, hospitals, skilled nursing facilities, home health agencies, physical therapy programs, community health centers, health-related schools, state public health agencies, and physicians.  See Callum, 2015 WL 5782077, at *21 n. 23 (citing 80 Fed. Reg. at 54185, 54194-95).

Significantly, none of the examples provided in proposed regulations for a "health program or activity" or "covered entity" make any mention of prisons or agencies such as departments of corrections.  In fact, every one of entities or organizations listed are clearly involved in the delivery of health-related services as their principal focus.

Thus, even if Richards had alleged that the DOC received some sort of Federal financial assistance to operate health care programs or activities at its prisons, it is not clear to this Court that the DOC or its prisons are embraced by the ACA.  But here, Richards did not even allege that.  Richards's sole allegation to support his claims under the ACA—that Dayton had the "opportunity" to accept federal Medicaid funds to operate its inpatient care of DOC prisoners, (SAC, ¶ 57)—falls far short of the facts that must be pled to demonstrate that a "health program or activity" of the DOC was in fact receiving Federal financial assistance.

> scheme evidences a congressional intent to foreclose resort to section 1983 for remedy of statutory violations. Courts should presume that Congress intended that the enforcement mechanism provided in the statute be exclusive.

Alsbrook, 184 F.3d at 1011 (internal citations omitted).

Because Title II of the ADA and § 504 of the RA incorporate comprehensive remedial schemes, "Congress did not intend violations of those statutes to be also cognizable under § 1983." Id.; Battle v. Minnesota Dep't of Corr., 40 F. App'x 308, 309 (8th Cir. 2002) ("We agree with the District Court that Battle's disability-based discrimination claims were either not cognizable under § 1983 or fail on their merits. As to his ADA and RA claims, his sole recourse was under the ADA and RA themselves . . . .") (citation omitted); Pona v. Cecil Whittaker's, Inc., 155 F.3d 1034, 1038 (8th Cir. 1998) (Morris Sheppard Arnold, J., concurring) ("[W]e must be mindful of the principle that if the statutory right that a plaintiff seeks to vindicate comes outfitted with its own comprehensive remedial apparatus, a § 1983 action based on a violation of that statutory right will not lie.").

Here, Richards has asserted claims under § 1983 against the State, the DOC Defendants and Dayton for failing to provide a gluten-free diet, gluten-free dental materials, and diagnostic medical and genetic testing. However, Richards has also raised these same claims under the ADA and RA. As this Court previously held, because Congress intended that the enforcement mechanisms provided in the ADA and RA be exclusive, Richards's disability-based claims against the State, the DOC Defendants and Dayton are not cognizable under § 1983[8] and should be dismissed.[9]

---

[8]     Even if Richards's disability-based claims were cognizable under § 1983, the Court notes that the Eleventh Amendment would bar any § 1983 claim asserted against

### 2.      First Amendment Claim

In addition to his disability-based claims, Richards alleged that Hermerding

violated his First Amendment right to petition the government for the redress of

---

the State.  The Eleventh Amendment provides that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State."  Under the Eleventh Amendment, federal courts lack subject matter jurisdiction over a claim against a state when that state has not consented to the suit.  See Kimel v. Florida Bd. of Regents, 528 U.S. 62, 73 (2000); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 64-65 (1996).  Thus, "[u]nless a State has waived its Eleventh Amendment immunity or Congress has overridden it, . . . a State cannot be sued directly in its own name regardless of the relief sought."  Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985); see also Morstad v. Dep't of Corr. & Rehab., 147 F.3d 741, 743-44 (8th Cir. 1998); Murphy v. State of Ark., 127 F.3d 750, 754 (8th Cir. 1997).  When a lawsuit is barred by the Eleventh Amendment, the case must be dismissed for lack of subject matter jurisdiction.  Seminole Tribe, 517 U.S. at 64-65.

Congress did not abrogate the states' immunity by enacting 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 345 (1979).  In addition, the State of Minnesota has not waived its immunity from § 1983 claims, (Phillips v. Minnesota State Univ., Civ. No. 09-1659 (DSD/FLN), 2009 WL 5103233, *3 (D. Minn. 2009)), nor has Minnesota consented to suit.[8]  See DeGidio v. Perpich, 612 F. Supp. 1383, 1388-89 (D. Minn. 1985) (finding that waiver of immunity by a state will be found "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'") (citation omitted).  Accordingly, even if Richards could assert his disability claims against the State under § 1983, the Court would recommend dismissal based on a lack of subject matter jurisdiction.

[9]      Because Richards's disability-based claims are not cognizable under § 1983, the Court need not reach the question whether Richards has alleged sufficient personal involvement by Dayton to survive a motion to dismiss.  However, the Court notes that in the March 30, 2015 Order, the Court dismissed without prejudice all § 1983 claims against Dayton in his individual and official capacities, having found that Richards had failed to allege facts showing that Dayton personally participated in the deprivation of gluten-free food, beverages or dental materials.  The March 30, 2015 Order allowed Richards to amend his Complaint to assert additional facts to support his claims against Dayton.  In his Second Amended Complaint, Richards offered no new information regarding Dayton's personal involvement in the violation of his constitutional rights, except to generally allege that he failed to properly train and supervise Roy. Consequently, even if Richards's disability-based claims could be brought under § 1983 against Dayton, which they cannot, the Court would recommend that they be dismissed.

grievances by prohibiting him from corresponding with Packwood to obtain proper food and beverages for his diabetes and Celiac Disease.

As an initial matter, the Court notes that this claim was not included in Richards's First Amended Complaint (in fact, Hermerding was not even mentioned in the First Amended Complaint), and Richards did not seek permission from the Court or the consent of defendants to add it, in violation of Rule 15 of the Federal Rules of Civil Procedure. Nevertheless, even if Richards had sought leave to amend his complaint, the Court concludes that Richards has failed to allege sufficient facts to sustain his First Amendment claim and, in any event, it is futile.

In the Second Amended Complaint, Richards asserted that Hermerding violated his First Amendment rights by "prohibiting [him] from corresponding with Packwood to try to get proper food and beverages for his Diabetes and Celiac Disease" and by "interfering with [his] right to communicate with those in charge of his supply of food and beverages . . . ." SAC, ¶ 113. Richards provided no information as to when, where or how Hermerding prevented him from communicating with Packwood. Further, Richards did not explain how his alleged inability to correspond with Packwood led to the deprivation of gluten-free meals or gluten-free dental materials. In short, Richards's conclusory allegations do not allow the Court "to draw the reasonable inference that [Hermerding] is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

However, even if Richards did remedy the dearth of facts underlying this claim, it is futile. While Richards framed his First Amendment claim as a § 1983 claim, substantively, it is nothing more than, and in fact is part and parcel of, his disability

claims under the ADA and RA. Consequently, he cannot assert this disability claim against Hermerding under § 1983. Richards's First Amendment claim should be dismissed.

### D. Claims Under the RA and ADA

#### 1. RA Claims Against the State

The Rehabilitation Act provides that "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 [29 U.S.C. § 794], . . . or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." 42 U.S.C. § 2000d-7. "[T]his waiver of sovereign immunity is limited and applies only to the individual agency that receives the federal funds, i.e., a state can avoid waiver by 'accepting federal funds for some departments and declining them for others.'" Doe v. Nebraska, 345 F.3d 593, 598 (8th Cir. 2003) (quoting Jim C. v. United States, 235 F.3d 1079, 1081 (8th Cir. 2000)).

In the Second Amended Complaint, Richards alleged that the State has accepted federal funds to support the DOC's drug-treatment program, to construct the DOC's facilities, and to support prisoner-education activities. SAC, ¶¶ 3-5. Additionally, Richards represented that he "has not made an all-encompassing claim against every division of the State; in fact all of Plaintiff's health-related claim target only the State's DOC division and those State officials who have authority over that particular division." Pl.'s Mem, p. 15 (emphasis added by plaintiff).

Because Richards has alleged that the State accepted federal funds to operate its DOC division, the Court concludes that the State has waived its Eleventh

Amendment immunity with respect to the DOC.  Doe, 345 F.3d at 598 ("In Jim C., we held that Arkansas waived its sovereign immunity to suit for § 504 claims against the Arkansas Department of Education when it chose to accept federal funds for that department.") (citing Jim C., 235 F.3d at 1080)).  Richards may assert his RA claims against the State for conduct arising out of the DOC.

## 2.    RA and ADA Claims Against Dayton

This Court previously found that Richards's ADA and RA claims asserted against Dayton should be dismissed without prejudice for failure to allege sufficient personal involvement in the violation of Richards's disability accommodation.  See Docket No. 110, pp. 71, 82.  In the March 30, 2015 Order, the District Court permitted Richards to cure the deficiencies in his pleading by asserting additional facts in support of his disability claims against Dayton.  However, the Second Amended Complaint contains no new factual allegations with respect to Dayton's role in the alleged violations.  As such, Richards's ADA and RA claims against Dayton should be dismissed.

## 3.    Punitive Damages

Richards has sought punitive damages under the RA and ACA against the State.[10]  However, "punitive damages 'may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act.'"  Meagley v. City of Little Rock, 639

---

[10]    Richards also sought punitive damages under the ACA.  Because the Court has already recommended dismissal of Richards's ACA claims, the Court need not determine whether Richards may assert a claim for punitive damages under the ACA.  However, the Court notes that the ACA incorporates the enforcement mechanisms available for violations of the ADA and RA.  42 U.S.C. § 18116(a) ("The enforcement mechanisms provided for and available under such title VI, title IX, section 504, or such Age Discrimination Act shall apply for purposes of violations of this subsection.").  Thus, because punitive damages are not available under the ADA and RA, they are also not available under the ACA for claims based on the violation of those statutes.

F.3d 384, 390 (8th Cir. 2011) (quoting <u>Barnes v. Gorman</u>, 536 U.S. 181, 189 (2002)).
Richards's claim for punitive damages under the RA and ACA should be dismissed.

### E.    <u>Dismissal of Claims With or Without Prejudice</u>

Ordinarily, a claim dismissed pursuant to Rule 12 should be dismissed without
prejudice.  <u>Frey v. City of Herculaneum</u>, 44 F.3d 667, 672 (8th Cir. 1995); <u>Huelsman v.
Civic Center Corp.</u>, 873 F.2d 1171, 1176 (8th Cir. 1989).  Dismissal with prejudice
should be used sparingly because it is a drastic sanction.  <u>Omaha Indian Tribe v. Tract
I--Blackbird Bend Area</u>, 933 F.2d 1462, 1468 (8th Cir.), <u>cert. denied</u>, 502 U.S. 942
(1991); <u>Welsh v. Automatic Poultry Feeder Co.</u>, 439 F.2d 95, 96 (8th Cir. 1971).  "An
action should be dismissed with prejudice 'only after balancing the policy of giving the
plaintiff her day in court against [the] policies of preventing undue delay, avoiding court
congestion, and preserving respect for court procedures.'"  <u>Omaha Indian Tribe</u>, 933
F.2d at 1468 (quoting <u>Garrison v. International Paper Co.</u>, 714 F.2d 757, 760 (8th Cir.
1983)).  In striking this balance, all the facts and circumstances of the case must be
considered.  <u>Garrison</u>, 714 F.2d at 760.

On the other hand, when a complaint is so deficient or defective that the court is
convinced that its defects cannot be cured through re-pleading, dismissal with prejudice
is appropriate.  <u>Sellors v. Obama</u>, Civ. No. 13-2484 (SRN/JSM), 2014 WL 1607747, at
*14 (D. Minn. April 15, 2014) (Order overruling objections to Report and
Recommendation that recommended dismissal of an amended complaint with prejudice
due to incurable pleading defects); <u>Ikechi v. Verizon Wireless</u>, Civ. No. 10–4554
(JNE/SER), 2011 WL 2118797, at *5, n. 6 (D. Minn. April 7, 2011) (recommending
dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff

could cure the defective pleading on re-pleading), Report and Recommendation adopted, 2011 WL 2118791, at *3 (D .Minn. May 25, 2011); see also McLean v. United States, 566 F.3d 391, 400–401 (4th Cir. 2009) ("to the extent ... that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice. Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (holding that dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment").

In the instant case, the Court concludes that all claims asserted against Dayton should be dismissed with prejudice.  In the previous Report and Recommendation, this Court found that Richards had failed to plead facts showing that Dayton was personally involved in the alleged violation of Richards's rights under the Constitution, ADA and RA.  The District Court permitted Richards to amend his pleading to allege additional facts in support of his claims asserted against Dayton.  However, the Second Amended Complaint contains no new facts with respect to Dayton's involvement in any of the alleged violations, except for general and conclusory allegations that he was responsible for the supervision of Roy.  After three complaints and more than two years to develop facts to support his claims against Dayton, Richards should not be given yet another chance to cure the deficiencies in his pleading.

The Court also concludes that the claims against Simon and Anderson should be dismissed with prejudice.   This Court has previously dismissed with prejudice

Richards's claim for the $1.00 refund; the claim for the $1.00 refund was not raised in the Second Amended Complaint; Richards has not alleged a single fact to support his claim that Anderson and Simon should be enjoined from prospectively taking any property from him; and his failure to address defendants' arguments to dismiss this claim constitutes a waiver of the claim.  The Court can conceive of no grounds to give Richards another opportunity to resurrect this claim.

The Court recommends that all § 1983 claims against the State and DOC Defendants arising out of Richards's allegations that they denied him gluten-free meals, gluten-free dental materials, and medical diagnostic procedures be dismissed with prejudice.  These disability-based claims against the State, the DOC Defendants and Dayton are not cognizable under § 1983 because they are governed by the ADA and RA.

As for those claims that Richards pled without consent of defendants or leave of Court to add to his complaint—the ACA claim against the State and DOC Defendants, the JPay claim, and the First Amendment claim—the Court recommends the following. The JPay claim against the State cannot proceed because it is barred by the Eleventh Amendment and thus, the Court lacks subject matter jurisdiction over the claim.  As a general rule, when such a claim is dismissed for lack of subject matter jurisdiction, it is dismissed without prejudice, because the dismissal is not on the merits.  See O'Grady v. Marathon Cnty. Child Support Agency, Civ. No. 05-2418 (JNE/JJG), 2006 WL 1715473, at *1 (D. Minn. June 19, 2006) (citing Frederiksen v. City of Lockport, 384 F.3d 437, 438-39 (7th Cir. 2004)).  However, Richards cannot pursue the claim in federal court.  O'Grady, 2006 WL 1715473, at *1 ("A jurisdictional disposition is

conclusive on the jurisdictional question: the plaintiff cannot re-file in federal court. But it is without prejudice on the merits, which are open to review in state court to the extent the state's law of preclusion permits.") (quoting <u>Frederiksen</u>, 384 F.3d at 438). To the extent the JPay claim is asserted against the DOC Defendants, it should be dismissed with prejudice because it is governed by the ADA and RA, and cannot proceed under § 1983.

Likewise, Richards's First Amendment claims against Hermerding under § 1983 should be dismissed with prejudice, as the claim is governed by the ADA and RA, and not § 1983.

Finally, regarding Richards's disability-related claims against the State and DOC defendants based on the ACA, while the Court is highly dubious that he can allege sufficient facts to support these claims, as this is the first time he has raised them (albeit without consent of defendants or leave of Court), the Court will not recommend that they be dismissed with prejudice. However, after two-plus years since this case commenced, and with the time period for discovery nearly at the end, the Court believes that Richards's interests would be best served by focusing his attention on those claims that have survived defendants' motion practice and by proceeding to get this case ready for trial.

## IV.    RECOMMENDATION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that

Defendants State of Minnesota, Hermerding, Packwood, Larson, Roy, Dayton, Simon, and Anderson's Partial Motion to Dismiss Second Amended Complaint [Docket No. 147] be **GRANTED** in part and **DENIED** in part as follows:

1.     All claims asserted against Stephen Simon be **DISMISSED with prejudice**.

2.     All claims asserted against Bradley Anderson be **DISMISSED with prejudice**.

3.     All claims asserted against Mark Dayton be **DISMISSED with prejudice**.

4.     All claims under 42 U.S.C. § 1983 asserted against the State of Minnesota, Thomas Roy, Sheila Packwood and Nanette Larson be **DISMISSED with prejudice**.

5.     All claims under 42 U.S.C. § 1983 asserted against Mike Hermerding be **DISMISSED with prejudice**.

6.     All claims under the Affordable Care Act against the State of Minnesota, Thomas Roy, Sheila Packwood, Nanette Larson, and Mike Hermerding be **DISMISSED without prejudice**.

7.     All claims asserted under Section 504 of the Rehabilitation Act and Affordable Care Act for punitive damages be **DISMISSED with prejudice**.

8.     Defendants' motion to dismiss all claims asserted under Section 504 of the Rehabilitation Act against the State be **DENIED**.


Dated:       January 14, 2016            *s/ Janie S. Mayeron*
                                          JANIE S. MAYERON
                                          United States Magistrate Judge

**<u>NOTICE</u>**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 28, 2016** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.   A party may respond to the objecting party's brief within ten days after service thereof.   All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.